JOHN KRAUS, Plaintiff-Appellee, *v.* BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE VILLAGE OF NILES, Defendant-Appellant.

First District (2nd Division)    No. 78-525

Opinion filed May 22, 1979.

Richard J. Troy, of Chicago (Sneider and Troy, of counsel), for appellant.

Richard F. McPartlin, of Chicago, for appellee.

William J. Scott, Attorney General, of Chicago (Myra Turner, Assistant Attorney General, of counsel), for appellant as *amici curiae*.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, the Board of Trustees of the Police Pension Fund of the Village of Niles, Illinois (the Board), appeals from the denial of its motion to reconsider an order of the circuit court of Cook County wherein that court reversed a decision of the Board regarding pension benefits payable to John Kraus (plaintiff). The issue is whether the trial court erred in holding that under section 5 of article XIII of the 1970 Illinois Constitution, plaintiff was entitled to receive a pension based on a section of the Pension Code in effect at the time of his entry into the pension system and at the time the constitutional provision became effective,

although the section was subsequently repealed and replaced prior to the time plaintiff retired or became eligible to retire.

On June 1, 1956, plaintiff was appointed a patrolman on the police force of Niles, Illinois. On October 1, 1967, plaintiff was placed on disability, at which time he ceased making contributions to the Police Pension Fund and began receiving a disability pension.

On July 7, 1976, plaintiff had reached the age of 50 years and was credited with having served slightly more than 20 years with the police force, consisting of approximately 11 years of active service plus 9 years on disability. Six days later, on July 13, 1976, plaintiff advised the Board of his intent to retire on a regular pension pursuant to section 3—114 of the Illinois Pension Code (Ill. Rev. Stat. 1971, ch. 108½, par. 3—114), which reads, in relevant part, as follows:

> "Whenever a policeman becomes physically or mentally disabled to an extent which necessitates the suspension of his duty on, or retirement from, the police force, he shall be paid a pension of 1/2 of the salary attached to his rank on the police force for 1 year immediately prior to the time of suspension of duty or retirement. * * * If the disability continues for a period which, when added to his period of active service equals 20 years, the policeman shall, if he is age 50 and if he elects to then retire from the police force, be paid a regular pension in lieu of such disability pension."

The regular pension in effect then, as now, was equal to one-half of the salary attached to the rank held for 1 year immediately prior to retirement. Ill. Rev. Stat. 1971, ch. 108½, par. 3—111.

Plaintiff contends that pursuant to the foregoing sections, as interpreted in *People ex rel. Anastasia v. Civil Service Com.* (1973), 10 Ill. App. 3d 583, 295 N.E.2d 127, he was entitled to elect to be paid a regular pension, in lieu of his disability pension, equal to one-half of the salary attached to his rank *the year preceding his retirement on regular pension.*

The Board responds by citing the repeal of section 3—114, accomplished shortly after the decision in *Anastasia,* and the passage of section 3—116.1, effective October 1, 1973, in its stead. Section 3—116.1 (Ill. Rev. Stat. 1975, ch. 108½, par. 3—116.1) reads, in relevant part, as follows:

> "A policeman who completes 20 years of service and is age 50 or more, and who is on the disability pension roll under the foregoing Sections, may, at his option, * * * continue to receive, in lieu of any amounts which otherwise would be payable to him under Section 3—111 of this Article, a retirement pension for the remainder of his life, of 1/2 of the salary attached to his rank on the police force at the date of his retirement on disability. * * *"

The Board contends that this section applies in place of the repealed statute. Under section 3—116.1, plaintiff's regular pension would be equal to one-half of the salary attached to his rank *at the date of his retirement on disability pension.* Since the salary attached to the rank of patrolman presumably rose during the nearly eight years between the date plaintiff went on disability (October 1, 1967) and the year prior to his retirement on regular pension (July of 1975), plaintiff stands to gain a higher pension under old section 3—114 than under the newer section 3—116.1; hence, the present controversy.

The Board asserts that the legislature has the power, as necessity requires, to enact Pension Code modifications which directly diminish the benefits to be received by preexisting members of the pension system, so long as they do not affect the rights of those who are already eligible to retire or have retired. The Department of Insurance and its Director, Richard L. Mathias, essentially join in this position as *amici curiae.*

Plaintiff responds by citing section 5 of article XIII of the 1970 Illinois Constitution, which provides:

> "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."

Plaintiff asserts that under this provision, which became effective July 1, 1971, he acquired a vested right to pension benefits as computed as of the time he became a member of the pension system, or at least as of the effective date of the constitutional provision. Therefore, plaintiff argues, the legislature's subsequent repeal of section 3—114 cannot constitutionally apply to him because it would amount to a diminution or impairment of his benefits.

At this point it is appropriate to note that the term "vesting" may be used in two senses in referring to pension benefits. Vesting in a functional sense refers to a provision in a retirement plan whereby the member's right to a benefit becomes effective upon fulfillment of specified qualifying conditions, such as service for a certain period of time, which right is not forfeited by separation from service prior to the prescribed age for retirement. Vesting in a legal sense, on the other hand, refers to a contractual right to and interest in a pension that may be upheld at law. (See Report of the Illinois Public Employees Pension Laws Commission 102, 166 (1973).) As used herein, the word "vesting" is employed only in its contractual sense.

Resolution of the issues presented requires a brief inquiry into the nature of pension rights under Illinois law prior to the adoption of the pension provision in the Illinois Constitution of 1970. (See generally Cohn,

*Public Employee Retirement Plans—The Nature of the Employees' Rights,* 1968 U. Ill. L.F. 32 (hereinafter Cohn); Comment, *Public Employee Pension Rights and the 1970 Illinois Constitution: Does Article XIII, Section 5 Guarantee Increased Protection?* 9 J. Mar. J. Prac. & Proc. 440, 440-49 (1976) (hereinafter Comment).) Traditionally, the status of pension rights in Illinois has depended on whether the employee's participation in the pension plan was compulsory or optional. If compulsory, participation in the plan was held to confer no vested or contractual rights. (*Bergin v. Board of Trustees* (1964), 31 Ill. 2d 566, 202 N.E.2d 489; *Keegan v. Board of Trustees* (1952), 412 Ill. 430, 107 N.E.2d 702.) This stemmed from the somewhat archaic characterization of pension benefits in mandatory plans as mere gratuities, in the "nature of a bounty springing from the appreciation and graciousness of the sovereign * * *." (*Blough v. Ekstrom* (1957), 14 Ill. App. 2d 153, 160, 144 N.E.2d 436; see, *e.g., Pecoy v. City of Chicago* (1914), 265 Ill. 78, 106 N.E. 435.) The result was that the pension plans could be amended, changed, or repealed as the legislature saw fit (*e.g., Bergin v. Board of Trustees* (1964), 31 Ill. 2d 566, 574, 202 N.E.2d 489), apparently, it has been suggested, even to the extent of terminating or recalling benefits altogether. (*Pecoy v. City of Chicago* (dicta); Cohn, 1968 U. Ill. L.F. 32, 52.) However, no case that we have found has gone so far and there is some dicta to the contrary. See *Londrigan v. Board of Trustees* (1972), 7 Ill. App. 3d 572, 575, 288 N.E.2d 125 (rights become vested as to payments accrued and payable, even in compulsory plans).

On the other hand, where participation in the pension plan was optional, the plan was characterized as a contractual relationship and the employee's rights to benefits were held to be contractual rights, vested from the time the employee began contributing to the pension fund. (*Bardens v. Board of Trustees* (1961), 22 Ill. 2d 56, 174 N.E.2d 168; *Raines v. Board of Trustees* (1937), 365 Ill. 610, 7 N.E.2d 489.) Thus, in *Bardens,* a voluntary participant in a pension plan was held entitled to a pension based on the statute in effect at the time he entered the pension system, rather than the statute as amended prior to his retirement.

Although it has not been without critics (see, *e.g.,* Cohn, 1968 U. Ill. L.F. 32), and although it has not always been maintained with uniform precision, the compulsory-optional distinction has consistently been adhered to whenever the validity of reduction or termination of pension benefits has been challenged in Illinois. (Comment, 9 J. Mar. J. Prac. & Proc. 440, 448 (1976).) Perhaps the greatest test of the tenacity of the distinction was posed in *Keegan v. Board of Trustees* (1952), 412 Ill. 430, 107 N.E.2d 702, wherein the court was confronted with a plan in which participation was mandatory, but the legislature had declared the annuities and benefits of the plan to be vested rights. The court

reaffirmed the traditional rule that rights in compulsory plans were not contractual, decided that the legislature could not have intended to change the rule, and then held that the rights, though vested, remained noncontractual. Thus was created "a vested right * * * in the participant to share in the fund in the manner and on such terms as the legislature may, from time to time, determine best serves the welfare of the participants and the people of the State." (412 Ill. 430, 436, 107 N.E.2d 702.) As has been observed, such a right is distinctly inferior to a contractual right. Cohn, 1968 U. Ill. L.F. 32, 60-62; Comment, 9 J. Mar. J. Prac. & Proc. 440, 446 n. 30 (1976).

In the instant case, despite plaintiff's contentions regarding the necessity of an application, participation in the pension fund was compulsory. (*Blough v. Ekstrom* (1957), 14 Ill. App. 2d 153, 144 N.E.2d 436; accord, *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 357 N.E.2d 582.) Were the compulsory-optional distinction applied without regard to the new pension provision in the constitution, plaintiff would be held to have no contractual or vested rights in the plan and the subsequent legislative amendment would apply to him. Therefore, the question is the extent to which section 5 of article XIII has modified or eliminated the compulsory-optional distinction.

The compulsory-optional distinction has continued to appear in decisions rendered after the effective date of the new pension provision in the 1970 Illinois Constitution (Comment, 9 J. Mar. J. Prac. & Proc. 440, 448, 462 (1976)), but in most of these the constitutional question has not been reached. (See *Shanahan v. Policemen's Annuity & Benefit Fund* (expressly not considering the constitutional question); *Lee v. Retirement Board* (1974), 22 Ill. App. 3d 600, 317 N.E.2d 758 (no diminution or impairment involved, section 5 of article XIII not mentioned); *Londrigan v. Board of Trustees* (1972), 7 Ill. App. 3d 572, 288 N.E.2d 125 (relevant facts predated the effective date of the new constitution, section 5 of article XIII not mentioned).) While there is dicta in one case to the effect that the constitutional provision may have abolished the compulsory-optional distinction (*Illinois State Employees' Association v. McCarter* (1973), 9 Ill. App. 3d 764, 769, 292 N.E.2d 901), which distinction was expressly mentioned in the constitutional debates (4 Record of Proceedings, Sixth Illinois Constitutional Convention 2925), the extent to which section 5 of article XIII has changed prior Illinois pension law is not immediately clear. Accordingly, we proceed to a discussion of those cases that have had occasion to construe and apply the new pension provision.

In *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 311 N.E.2d 107, the court was confronted with the issue of whether adoption of an ordinance reducing the mandatory retirement age of a city's policemen

and firemen from 63 to 60 years amounted to an unconstitutional diminution or impairment of the pension benefits of the plaintiffs, who were forced to retire under the ordinance. The court began by stating that the debates on the constitutional provision reflect uncertainty as to the scope of the restriction imposed on legislative bodies by the provision, and the court noted that it had not previously considered the nature of the " 'enforceable contractual relationship' " established by the provision. (57 Ill. 2d 142, 151, 311 N.E.2d 107.) The court then observed that a similar provision is contained in the Constitution of New York (McKinney's Const., art. 5, §7) and has been construed by the courts of that state. (*Peters*, 57 Ill. 2d 142, 151, 311 N.E.2d 107.) From its review of the debates and the New York authorities in accord, the court concluded that:

> "[T]he purpose and intent of the constitutional provision was to insure that pension rights of public employees which had been earned should not be 'diminished or impaired' but that it was not intended, and did not serve, to prevent the defendant City from reducing the maximum retirement age, even though the reduction might affect the pensions which plaintiffs would ultimately have received." 57 Ill. 2d 142, 152, 311 N.E.2d 107.

The next case directly construing the new pension provision dealt with the question of whether and to what extent the provision mandated any particular level of funding. In *People ex rel. Illinois Federation of Teachers v. Lindberg* (1975), 60 Ill. 2d 266, 326 N.E.2d 749, the plaintiffs, members of several teachers' pension funds, brought suits challenging the Governor's authority to make item reductions of pension fund appropriations and asserting that the pension system members enjoyed a present contractual right to enforce a specific level of pension plan funding. The court again examined the debates on the constitutional provision and held that although one delegate expressed the opinion that the legislature should adequately fund the pension systems, four other delegates expressed the intent that the provision was not meant to require any specific level of pension appropriations. (60 Ill. 2d 266, 271-72, 326 N.E.2d 749.) The court quoted from the remarks of Delegate Kinney, a cosponsor of the provision, who stated: " 'It was not intended to require 100 per cent funding or 50 per cent or 30 per cent funding or get into any of those problems, aside from the very slim area where a court might judicially determine that imminent bankruptcy would really be impairment.' " (60 Ill. 2d 266, 271-72, quoting 4 Proceedings 2929, and citing 4 Proceedings 2926.) The court also found no basis for the argument that the provision was intended to restrict the Governor's constitutional veto power. In holding that section 5 of article XIII mandated no specific

level of funding, at least up to the point of actual disruption or impairment to which Delegate Kinney referred, the court was further supported by the fact that no reference to funding appears in the constitutional pension provision. See Comment, 9 J. Mar. J. Prac. & Proc. 440, 460 (1976).

The court in *Lindberg* then turned to the question of whether the legislature by statute had created any presently existing right to a specific level of funding. For this purpose, noting that the pension plans at issue were compulsory, the court reiterated the traditional rule that compulsory participation in a statutory pension plan confers no vested right, thus permitting amendment, change, or repeal as the legislature sees fit. (*Lindberg*, 60 Ill. 2d 266, 273, 326 N.E.2d 749, citing *Bergin v. Board of Trustees* (1964), 31 Ill. 2d 566, 574, 202 N.E.2d 489.) The court then found that the statutes upon which the plaintiffs were seeking to establish a contractual relationship were simply engrafted from prior pension laws which had been construed as not conferring a vested right. (*Lindberg*, 60 Ill. 2d 266, 274-75, 326 N.E.2d 749.) Because it would have been a simple matter for the legislature to state that the statutes created a contractual relationship if the legislature intended to depart from the traditional rule, in the absence of such a statement, the court could not find any presently existing contractual right created by statute upon which pension appropriation reductions could be challenged. 60 Ill. 2d 266, 275, 326 N.E.2d 749.

The next case to consider the effect of the new constitutional pension provision upon the power of the legislature dealt with the very same amendment to the Pension Code at issue here. In *Peifer v. Board of Trustees* (1976), 35 Ill. App. 3d 383, 342 N.E.2d 131, *appeal denied* (1976), 63 Ill. 2d 552, the plaintiff joined the police force in 1949. In 1964, he began receiving a disability pension. In May of 1973, while still on disability, the plaintiff wrote to the defendant pension board inquiring as to the amount he would receive if he elected to retire from the police force pursuant to section 3—114 of the Pension Code. The defendant board did not reply until after the legislature had repealed section 3—114 and replaced it with section 3—116.1, as described at the outset of this opinion. The board's reply simply referred the plaintiff to this recent legislative action.

The plaintiff brought an action asking for a declaration of his right to retire pursuant to old section 3—114. On appeal from the trial court's dismissal of the action, this court held that because the plaintiff had already become eligible to receive benefits under section 3—114 at the time of his inquiry to the board, application of the subsequent amendment so as to reduce his benefits would be a violation of the

plaintiff's contractual rights under section 5 of article XIII of the 1970 Illinois Constitution. (*Peifer v. Board of Trustees* (1976), 35 Ill. App. 3d 383, 387-88, 342 N.E.2d 131.) Having determined that the plaintiff had the right to retire pursuant to section 3—114, the court remanded the matter for further proceedings.[1]

The latest case to construe the new pension provision is *Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 382 N.E.2d 243, *cert. denied* (1979), 47 U.S.L.W. 3697. The issue in that case concerned the effect of a felony conviction upon the pension rights of the late Otto Kerner, Jr., former Governor of Illinois. In 1965, Otto Kerner applied for and was accepted into membership in the State Employees' Retirement System. Following his resignation in 1968, he began receiving retirement pension benefits. He was thereafter convicted of a felony related to his service as Governor. The board of trustees of the pension system then refused to make any further pension payments, pursuant to section 14—199 of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 14—199), which provides for such termination, and which also provides: "All future entrants entering service subsequent to July 9, 1955 shall be deemed to have consented to the provisions of this section as a condition of coverage."

One contention advanced on appeal was that application of section 14—199 would be unconstitutional under section 5 of article XIII of the 1970 Illinois Constitution. The court responded:

> "The difficulty with plaintiff's position is that the very section of the Constitution upon which he relies provides that membership in the retirement system is 'an enforceable contractual relationship.' Section 14—199 was, of course, in effect years before Otto Kerner became a member of the retirement system, and it became, by its terms, a condition of the contractual relationship to which he consented by applying for membership. * * * Plaintiff does not explain how enforcement of this condition, to which the parties agreed and which has existed throughout the duration of the contract, can become an unconstitutional impairment of the benefits of that contract. [Citation.] Membership in the System was

---

[1] On appeal after remand (*Peifer v. Board of Trustees* (1978), 57 Ill. App. 3d 102, 372 N.E.2d 1106), after determining that the first decision had not decided the question, the court faced the issue of what date should be used to calculate the plaintiff's pension. The court held that while the plaintiff's right to receive a regular pension under section 3—114 may have become fixed when the plaintiff became eligible to retire in January of 1969, the amount of that pension did not become fixed until the plaintiff actually did retire in July of 1976, since under section 3—111 of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 3—111), the amount of the regular pension was based on the salary for the year prior to retirement, rather than the year prior to eligibility to retire. *Peifer v. Board of Trustees* (1978), 57 Ill. App. 3d 102, 106-07, 372 N.E.2d 1106.

sought with knowledge of this condition, and it clearly cannot be said to impair or diminish the benefits within the meaning of the constitutional provision." 72 Ill. 2d 507, 514-15, 382 N.E.2d 243.

We have examined the foregoing cases, but, despite the parties' contentions to the contrary, we cannot find any of them to be wholly dispositive of the instant appeal. Nevertheless, they are instructive. In *Peters,* the court looked first to the debates and then to constructions of a similar New York constitutional provision in finding that a reduction in the mandatory retirement age contained in the Municipal Code did not amount to an unconstitutional diminution of pension benefits, even though it indirectly affected the pensions which the plaintiffs would ultimately have received. The *Peters* court made no mention of the old compulsory-optional distinction.

In *Lindberg,* the court once again looked first to the debates in finding that the constitutional provision was not intended to require any specific level of pension funding or to restrict the Governor's veto power. The court then turned to the question of whether the legislature *by statute* had created a contractual right to a specific level of funding. For this purpose only, and only after the court had found no constitutional contract right, did the court utilize the compulsory-optional distinction to show that the sections of the Pension Code relied upon did not create, and had never been construed as creating, a statutory contract right. See also Comment, 9 J. Mar. J. Prac. & Proc. 440, 461 (1976).

In *Peifer,* this court decided that section 5 of article XIII prohibited an application of an amendment to the Pension Code that would have had the direct effect of diminishing pension benefits to which the plaintiff, being eligible to retire, had already become entitled. It is clear that the new constitutional provision accomplished at least that much, even in the context of compulsory pension plans; else it would have done nothing at all. But the holding in *Peifer* was properly no broader than its facts required, and there is nothing in *Peifer* that forecloses a decision one way or the other in the case at bar.

Finally, in *Kerner* the court decided that a section of the Pension Code became a condition of the pension member's contractual relationship at the time he applied for membership in the pension system. However, *Kerner* is unusual in that it dealt with a section of the Pension Code which by its terms became a part of the pension system member's contract at the time he became a member, whether as a compulsory or optional participant, and irrespective of the subsequent constitutional provision. If the constitutional contractual relationship extended only to such statutorily designated sections, the legislature could circumvent the constitutional provision by simply failing to state that its amendment was

to become part of the contract, an obviously absurd result. Clearly, section 5 of article XIII must mean something more.

Having found that the decided cases, while instructive, are not determinative, we will follow the lead of our supreme court in *Peters* and *Lindberg* and examine the debates on the constitutional provision as they relate to the situation at bar. The confused nature of the debates on section 5 of article XIII has been noted before. (*Peters*, 57 Ill. 2d 142, 150-51, 311 N.E.2d 107; Comment, 9 J. Mar. J. Prac. & Proc. 440, 449-52 (1976).) Nevertheless, the debates do establish that the delegates were aware of the Illinois courts' rulings as to the nature of public employee pension benefits in mandatory plans, *i.e.*, bounties. (4 Proceedings 2925.) It is also evident that the delegates knew that New York had established a very similar constitutional provision in 1938, and they intended to achieve the same results by adopting the language of the New York provision, although some were unsure as to what those results were. 4 Proceedings 2925.

While a number of mistaken assertions were made by both advocates and opponents of the section (Comment, 9 J. Mar. J. Prac. & Proc. 440, 450-51 & n. 49 (1976)), the clearest expressions of the intent behind the section were made by Delegate Kinney, a cosponsor of the provision and the delegate on whose remarks the court in *Lindberg* initially relied. (*Lindberg*, 60 Ill. 2d 266, 271-72, 326 N.E.2d 749.) Delegate Kinney several times spelled out the intent behind section 5 of article XIII with regard to the diminution of benefits; her remarks are worth quoting:

> "Benefits not being diminished really refers to this situation: If a police officer accepted employment under a provision where he was entitled to retire at two-thirds of his salary after twenty years of service, that could not subsequently be changed to say that he was entitled to only one-third of his salary after thirty years of service, or perhaps entitled to nothing. This is the thrust of the word 'diminished.' " (4 Proceedings 2929.)
>
> "It is simply to give them a basic protection against abolishing their rights completely or changing the terms of their rights after they have embarked upon the employment—to lessen them." (4 Proceedings 2929.)
>
> "All we are seeking to do is to guarantee that people will have the rights that were in force at the time they entered into the agreement to become an employee, and as Mr. Green has said, if the benefits are $100 a month in 1971, they should not be less than $100 a month in 1990." 4 Proceedings 2931-32.

■■ These interpretations of the provision's effect are directly applicable to this appeal and, in contrast to *Lindberg*, establish an intent to afford

constitutional protection to plaintiff in the case at bar. At the time plaintiff became an employee of the police force and a member of the pension system, the applicable section of the Illinois Pension Code, which became section 3—114 (Ill. Rev. Stat. 1971, ch. 108½, par. 3—114), provided that if he went on disability and then elected to retire on regular pension, he would receive a pension of one half the salary attached to his rank for the year preceding his retirement on regular pension. When section 5 of article XIII came into effect in 1971, its purpose and effect were to guarantee that he would receive not less than the benefits he would receive under that pension. Then, in 1973, the legislature repealed section 3—114 and replaced it with section 3—116.1. (Ill. Rev. Stat. 1975, ch. 108½, par. 3—116.1.) Application of that amendment to plaintiff would amount to a change in the terms of his contract with the pension system, 17 years after he embarked upon his employment and 2 years after the constitution fixed the terms of the contract, and would directly diminish his benefits under the contract. We believe that section 5 of article XIII was intended to prohibit just such a result. We therefore hold that section 3—116.1 cannot constitutionally apply to plaintiff. He is entitled to receive benefits under the relevant sections of the Pension Code as in effect at the time the constitutional provision became effective in 1971.

This result is bolstered by the fact that the same result obtains under the very similar New York constitutional provision, of which the delegates, as we have noted, were aware. (4 Proceedings 2925, 2931.) That provision reads:

> "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." (McKinney's Const., art. 5, §7.)

In construing this provision, the Court of Appeals of New York has left no doubt as to its intended effect:

> "By the constitutional amendment the people determined to confer contractual protection upon the benefits of pension and retirement systems of the State and of the civil divisions thereof, and to prohibit their diminution or impairment *prior to retirement.* * * * [S]uch systems were no longer gratuitous, but by virtue of the new amendment became contracts and the members of pension systems thereby acquired vested interests which could not thereafter be diminished or impaired. * * *
>
> * * *
>
> The purpose of the amendment was to fix the rights of the employee at the time he became a member of the system. * * *"
> (*Birnbaum v. New York State Teachers Retirement System* (1958),

5 N.Y.2d 1, 176 N.Y.S.2d 984, 152 N.E.2d 241, 245; accord, *Newman v. Levitt* (Sup. Ct. 1976), 84 Misc. 2d 903, 377 N.Y.S.2d 962.)

Thus, in *Birnbaum* the plaintiffs were existing members of the retirement system when the constitutional amendment took effect in 1940. Thereafter, in 1946, prior to the time plaintiffs became eligible to retire, the retirement system adopted a mortality table that would have had the effect of reducing the amount which would be paid to plaintiffs pursuant to the table in effect when they joined the system. The court held that the new table could not constitutionally be applied to the plaintiffs.

Later cases have reaffirmed *Birnbaum* but have qualified its holding to make clear that the employees' rights become fixed as of the time they entered the system or the time the constitutional amendment became operative, whichever is later, but not at the time of retirement. (*Ayman v. Teachers' Retirement Board* (1961), 9 N.Y.2d 119, 211 N.Y.S.2d 198, 172 N.E.2d 571; *Haupt v. Teachers Retirement Board* (Sup. Ct. 1960), 28 Misc. 2d 686, 210 N.Y.S.2d 337; see also *Day v. Mruk* (1954), 307 N.Y. 349, 121 N.E.2d 362; *Cashman v. Teachers Retirement Board* (Sup. Ct. 1948), 193 Misc. 57, 84 N.Y.S.2d 142, *aff'd* (1949), 275 App. Div. 908, 90 N.Y.S.2d 273, *aff'd* (1950), 301 N.Y. 501, 93 N.E.2d 71.) And in a situation quite similar to the one at bar, the New York court has held that a statute changing the salary base on which retirement benefits are computed could not constitutionally be applied to those who became members of the system prior to the state's effective date. (*Kleinfeldt v. New York City Employees' Retirement System* (1975), 36 N.Y.2d 95, 365 N.Y.S.2d 500, 324 N.E.2d 865.) While the particular plaintiff in *Kleinfeldt* was eligible to retire at the time the statute was changed, the court made clear that the statutory reduction could only affect those who entered service and membership in the fund after the statute became effective. See also *Kranker v. Levitt* (1972), 30 N.Y.2d 574, 330 N.Y.S.2d 791, 281 N.E.2d 840; *Weber v. Levitt* (1973), 41 App. Div. 2d 452, 344 N.Y.S.2d 381, *aff'd* (1974), 34 N.Y.2d 797, 359 N.Y.S.2d 39, 316 N.E.2d 327, *cert. denied* (1974), 419 U.S. 997, 42 L. Ed. 2d 271, 95 S. Ct. 311.

■ We believe that the convention debates establish an intent to adopt the language and basic thrust of the New York constitutional provision, and thus to require a result in favor of plaintiff in the instant case. Delegate Kinney stated:

"But I would say that the New York Constitution adopted such a provision in 1938, and this amendment is substantially the same language as the New York Constitution presently has. The thrust of it is that people who do accept employment will not find at a future time that they are not entitled to the benefits they

thought they were when they accepted the employment." (4 Proceedings 2931.)

Just as our supreme court in *Lindberg* examined the debates and in *Peters* looked first to the debates and then to the New York provision and cases thereunder in considering the nature and content of the "enforceable contractual relationship" established by section 5 of article XIII, so have we done here. The fact that we have reached a different result does not import inconsistency, but rather indicates that a different result was intended. In *Lindberg*, the debates failed to establish any intent to constitutionally require a specific level of pension funding. In *Peters*, the debates established no intent to prohibit reduction of the mandatory retirement age, though such reduction might affect the pensions ultimately received, and the New York cases cited by the *Peters* court were in accord. (See, *e.g., Humbeutel v. City of New York* (Sup. Ct. 1953), 125 N.Y.S.2d 198, *aff'd* (1954), 283 App. Div. 1011, 131 N.Y.S.2d 445, *aff'd* (1955), 308 N.Y. 904, 126 N.E.2d 569; *Geary v. Phillips* (Sup. Ct. 1967), 53 Misc. 2d 337, 278 N.Y.S.2d 506; but see *Pettit v. McCabe* (Sup. Ct. 1969), 60 Misc. 2d 177, 302 N.Y.S.2d 209; compare *Donner v. New York City Employees' Retirement System* (1974), 33 N.Y.2d 413, 353 N.Y.S.2d 428, 308 N.E.2d 896.) In contrast, in the instant case the debates do establish an intent to afford the constitutional protection sought by plaintiff, and, as we have seen, the New York cases are in accord. (*E.g., Birnbaum v. New York State Teachers Retirement System* (1958), 5 N.Y.2d 1, 176 N.Y.S.2d 984, 152 N.E.2d 241.) Thus, our decision is consistent with *Lindberg* and *Peters* in ascertaining and giving effect to the intent behind the constitutional provision. Moreover, it is in harmony with *Peters* in applying the rule of construction that where a constitutional provision has been borrowed from another State after it has been construed by that State's court of last resort, the construction is generally adopted with the provision. 16 Am. Jur. 2d *Constitutional Law* §82 (1964); see Comment, 9 J. Mar. J. Prac. & Proc. 440, 454 (1976).

■ The reason behind that rule of construction, and a corollary rule, is also relevant here. That is, if the constitutional convention had intended to depart from the New York construction, presumably the terms of the provision would have been changed so as to effectuate that intent. (16 Am. Jur. 2d *Constitutional Law* §82 (1964).) Similarly, where other States have adopted provisions which deviate from the provision later used as a model by the constitutional convention, and the convention has not followed those deviations, the intent to adopt the original provision and construction would appear to be reinforced. (See 16 Am. Jur. 2d *Constitutional Law* §82 (1964).) That seems to be the case here. At the time of the constitutional convention in Illinois, three states other than New York had established pension provisions in their constitutions:

Alaska,[2] Hawaii,[3] and Michigan.[4] What is significant about these provisions, besides the reference to funding in the Michigan provision, is that all three refer to "accrued" benefits as being within the scope of protection, in significant contrast to the New York provision. Although no cases construing this language have been reported in Alaska or Hawaii, the courts in Michigan have construed their pension provision. While the matter is not free from all doubt (compare *In re Enrolled Senate Bill 1269* (1973), 389 Mich. 659, 209 N.W.2d 200 (legislature can attach new conditions, such as increased contributions, for earning unaccrued financial benefits) with *Detroit Police Officers Association v. City of Detroit* (1974), 391 Mich. 44, 214 N.W.2d 803, 816 (in a labor agreement context, provision means that "those already covered by a pension plan are assured that their benefits will not be diminished by future collective bargaining agreements")), it appears likely that the use of the word "accrued" signifies that pension rights do not vest until retirement. Comment, 9 J. Mar. J. Prac. & Proc. 440, 457 (1976); see 1 Official Record, Mich. Const. Conv. 1961, 770-71.

In either event, the absence of such a word as "accrued" in the 1970 Illinois Constitution is conspicuous. The convention could have followed the apparent lead of Alaska, Hawaii, and Michigan and used the word "accrued" to limit the terms of the contractual relationship to rights as existing at the time of retirement. Instead, the convention chose to follow New York and provide that the employees' rights vest at the time they become members of the system.[5] While our supreme court in *Peters*

---

[2] Alaska Const., art. XII, §7 (1959), which reads as follows: "Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired."

[3] Hawaii Const., art. XIV, §2 (1959), which reads as follows: "Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired."

[4] Mich. Const., art. IX, §24 (1963), which reads as follows:

"The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unaccrued liabilities."

[5] Interestingly, prior to the passage of the constitutional amendment in 1938, New York law provided that employees' rights at least became vested at retirement. (*Roddy v. Valentine* (1934), 268 N.Y. 228, 197 N.E. 260.) On the other hand, in Michigan, the rights did not vest even then (see *In re Enrolled Senate Bill 1269* (1973), 389 Mich. 659, 209 N.W.2d 200, 202, and cases cited therein), as was apparently the case in Illinois. (But see *Londrigan v. Board of Trustees* (1972), 7 Ill. App. 3d 572, 575, 288 N.E.2d 125, discussed *supra*.) Thus, the magnitude of the change in Illinois law accomplished by section 5 of article XIII becomes apparent, as the debates explicitly establish that the employees' rights were to become fixed at the time they became members of the pension system, as in New York. 4 Proceedings 2931-32; see also 4 Proceedings 2929; compare 1 Official Record, Mich. Const. Conv. 1961, 770-71 (emphasis on earned benefits, benefits not to be diminished after the service has been performed).

referred to pension rights "which had been earned" as those being subject to constitutional protection (57 Ill. 2d 142, 152, 311 N.E.2d 107), that was in the context of a reduction in the mandatory retirement age, which had only an indirect effect on the benefits which the plaintiffs might ultimately have received, and which, as we have seen, would not be prohibited under our interpretation. In contrast, in the instant case, we are dealing with an attempt to directly diminish benefits toward which plaintiff has contributed 17 years of service. To imply a requirement that those benefits have fully accrued in this context would, in our opinion, be an unwarranted judicial engraftment on the constitutional provision and would frustrate the express intent of its drafters.

Ironically, the result that we have reached also finds support in the old compulsory-optional distinction. Under that approach, as we have outlined above, participation in a compulsory plan conferred no vested or contractual rights, while participation in an optional plan created vested contractual rights. The use of the word "contractual" in section 5 of article XIII, then, assumes significance. During the debates, Delegate Whalen noted that under then existing Illinois law, there were two lines of cases, one which characterized pension benefits as contractual, while the other did not. He then stated that with this section's characterization of pension rights as contractual, the result would be to "lock in the contractual line of cases into the constitution, * * *." (4 Proceedings 2929.) When Delegate Whalen sought clarification, Delegate Kinney responded that the intent was to provide employees with the benefits as they were at the time the employees accepted employment. (4 Proceedings 2931.) This indeed was the result under the contractual line of cases prior to the new constitution, that the employees acquired vested contractual rights at the time they began to contribute (*e.g., Bardens v. Board of Trustees* (1961), 22 Ill. 2d 56, 174 N.E.2d 168), and this is what the delegates at the convention sought to extend to all public employees, without regard to whether their participation in the pension system was mandatory or voluntary. This, we believe, is what the constitutional provision which they ultimately passed has accomplished.[6]

---

[6] It is also significant that the delegates used the word "contractual," rather than the term "vested," in light of the holding in *Keegan v. Board of Trustees* (1952), which established what was known as a "vested non-contractual right." While it is possible, since the constitutional provision omits the word "vested," that the contractual right established therein could be deemed "contractual, but not vested," we are of the opinion that such a construction would flout the plain intent behind the provision. It would also be at odds with the rationale of *Kerner*, which, without mentioning the compulsory-optional distinction, implied that the terms of the contractual relationship are ascertained by looking to the time the employee becomes a member of the pension system. *Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 514-15, 382 N.E.2d 243.

The Board and *amici curiae* predict that our holding will have dire results. Accordingly, they seek to invoke the tenet that where a particular construction of a provision would render its operation mischievious or would result in absurdity or injustice, that construction should be avoided, provided the provision is susceptible of a different one (citing *People ex rel. Keeney v. City of Chicago* (1894), 152 Ill. 546, 552, 38 N.E. 744 (dealing with construction of a statute)). However, in doing so, they misapprehend and overestimate the impact of our decision.

All we have decided is that section 5 of article XIII prohibits legislative action which directly diminishes the benefits to be received by those who became members of the pension system prior to the enactment of the legislation, though they are not yet eligible to retire. Legislative action directed toward another aim, but which has an incidental effect on the pensions which employees would ultimately receive, is not prohibited. (*Cf. Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 152, 311 N.E.2d 107.) Thus, as in *Peters* and the New York cases in accord, the mandatory retirement age may be reduced. Similarly, a reduction in work hours or in salary itself is not a diminution of benefits within the meaning of the section, though it has an indirect effect on pension benefits ultimately received. (Accord, *Doyle v. Wright* (1951), 201 Misc. 884, 108 N.Y.S.2d 473; see also *Hoar v. City of Yonkers* (1946), 295 N.Y. 274, 67 N.E.2d 157.) Institution of a requirement that notice be given 30 days prior to making an election to retire has also been upheld. (*Gorman v. City of New York* (1952), 280 App. Div. 39, 110 N.Y.S.2d 711, *aff'd* (1952), 304 N.Y. 865, 109 N.E.2d 881.) It is also possible, although we do not decide the question, that an increase in the contribution rates of some employees to equalize their contributions with those of others would not be prohibited. (See *In re Enrolled Senate Bill 1269* (1973), 389 Mich. 659, 209 N.W.2d 200.) And, despite the Board's contentions to the contrary, there is nothing in the provision that precludes increases in benefits. *See* 4 Proceedings 2926, 2929.

It is also significant to note that " 'the "contractual relationship" is governed by the actual terms of the contract or pension.' " (*Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 514, 382 N.E.2d 243, quoting Ill. Ann. Stat., 1970 Const., art. XIII, §5, Constitutional Commentary, at 302 (Smith-Hurd 1971).) Thus, there is nothing to prohibit an employee from agreeing, for consideration, to accept a reduction in benefits. (Accord, *Rosen v. Teachers Retirement Board* (Sup. Ct. 1952), 202 Misc. 159, 115 N.Y.S.2d 263, *rev'd on other grounds* (1953), 282 App. Div. 216, 122 N.Y.S.2d 485 (principles of waiver are applicable).) It has also been held that an agreement whereby a cost of living allowance is paid and accepted by a public employee on condition that it will not be regarded as salary for pension purposes was

valid and binding on the employee. (*E.g., Carroll v. Grumet* (1952), 281 App. Div. 35, 117 N.Y.S.2d 553.) Indeed, the contract may be made subject to any contingency, consistent with public policy, built into the contract. (4 Proceedings 2930, 2931.) Therefore, a loss of benefits through noncompliance with a condition of the contract is not protected (*Kerner v. State Employees' Retirement System*; accord, *Holz v. Kowal* (1967), 27 App. Div. 2d 128, 276 N.Y.S.2d 398), and it has also been held that the loss of pension benefits accompanying dismissal from public employment does not unconstitutionally impair or diminish benefits. (*Robbins v. Police Pension Fund* (S.D. N.Y. 1970), 321 F. Supp. 93.) Thus, many of the Board's fears are unwarranted.

The Board also argues that plaintiff has contributed nothing while on disability, while the employee on active duty has continued to contribute to the fund, and therefore it would be unfair to award the same benefits to both. This argument was considered and rejected in *People ex rel. Anastasia v. Civil Service Com.* (1973), 10 Ill. App. 3d 583, 587, 295 N.E.2d 127, which interpreted the legislative intent behind section 3—114 to be to the contrary. While the legislature has since expressed a different intent, obviously the constitutional intent to guarantee benefits as they were must prevail. The Board also contends that our interpretation does not provide any incentive for policemen to "get off" disability and return to work. However, it is not the employee but the Board who decides, based on the results of medical examinations, when the employee should return to work. See Ill. Rev. Stat. 1975, ch. 108½, pars. 3—115, 3—116.

*Amici curiae* argue that our holding will cause administrative confusion and increase the burden of administering pension plans in Illinois, due to the difficulties involved in determining employees' pension rights at the time of enrollment rather than the time of retirement. This argument ignores the fact that under prior Illinois law, voluntary pension plan participants have always had their rights determined as of the time they began contributing. It is difficult to see how application of this principle across the board could lead to increased administrative difficulty.

Finally, the Board and *amici curiae* argue that our decision will freeze pension legislation for at least 20 years, thus making the repeal of section 3—114 not truly effective until 1993. However, once again, all we have decided is that a Pension Code modification changing the basis upon which pension benefits are directly determined cannot be applied to diminish the benefits of those who became members of the system prior to the statute's effective date. Thus, the legislative modification is presently applicable to persons entering the pension system after the statute's effective date. Accord, *Kleinfeldt v. New York City Employees' Retirement System* (1975), 36 N.Y.2d 95, 365 N.Y.S.2d 500, 324 N.E.2d

865; *Ayman v. Teachers' Retirement Board* (1961), 9 N.Y.2d 119, 211 N.Y.S.2d 198, 172 N.E.2d 571.

The Board and *amici curiae* nevertheless assert that the legislature should retain a reasonable power of modification, even to diminish the benefits to be received by prior members of the pension system. However, as one commentator has noted, the Pension Laws Commission attempted to have language allowing a reasonable power of legislative modification added to the section or read into the debates to establish intent, but no such action was taken during the convention. (Comment, 9 J. Mar. J. Prac. & Proc. 440, 451 (1976), citing Report of the Illinois Public Employees Pension Laws Com. 65-66 (1971).) While it might have been wise to provide for such a power (Cohn, 1968 U. Ill. L.F. 32, 62), there is no suggestion in the wording of the provision or in the debates to support the existence of one. Comment, 9 J. Mar. J. Prac. & Proc. 440, 463 (1976).

Plaintiff is entitled to receive a pension based on the relevant sections of the Pension Code in effect at the time that section 5 of article XIII of the 1970 Illinois Constitution became effective. Therefore, the judgment of the circuit court of Cook County in favor of plaintiff is affirmed.

Judgment affirmed.

DOWNING and HARTMAN, JJ., concur.