POLYTECHNICAL CONSULTANTS, Plaintiff-Appellant, *v.* LIND PLASTIC PRODUCTS, INC., Defendant-Appellee.

First District (2nd Division)    No. 79-651

Opinion filed March 25, 1980.

Jeffry T. Mandell, of Chicago, for appellant.

Craig P. Colmar and Vincent A. Frank, both of Johnson and Colmar, of Morton Grove, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, an employment agency, brought this action against defendant to recover a fee for the referral of a prospective employee, whom

the defendant subsequently hired. During a bench trial, at the close of plaintiff's evidence, the trial court granted defendant's motion for a directed finding. Plaintiff appeals, contending that a contract existed between the parties for employment services, and the trial court abused its discretion in granting defendant's motion.

The complaint sought judgment in the sum of $1,648.80 against defendant and alleged that "Plaintiff agreed to furnish to the Defendant an applicant, one JAMES TATE, to be considered for the position of Third Shift Foreman for the Defendant," and that "Defendant agreed that if they should hire MR. TATE that defendant pay * * * $1,684.80 * * *." A stipulated report of the testimony at trial is presented on appeal.

Clem Corr, an employment counselor for plaintiff, testified that on December 12, 1976, he talked with James Tate who was seeking a job as a foreman. He sent Tate on two job interviews with prospective employers on January 7, 1977, and January 20, 1977. On January 19, 1977, Corr called defendant and talked to Richard Lind regarding a particular job opening and Tate's qualifications for it. Lind told Corr to call him back in a week to set up an appointment with Tate. Corr then drew a job order, and discussed defendant's job opening with Tate and Leonard Lehman, the president of plaintiff employment agency. Under cross-examination, Corr admitted that perhaps his contact was made as a result of defendant's advertisement in a daily newspaper seeking a molding foreman.

Leonard Lehman testified that he talked with Richard Lind on January 25, 1977, and was instructed to send the applicant, Tate, to defendant for an interview at 10 a.m. the next day. Lehman notified Tate of the appointment and mailed a referral slip to defendant, as required by law. After the interview, Tate informed Lehman that defendant had hired him to start work immediately as a second-shift foreman at a salary of $11,238 per year. Lehman then sent an invoice to defendant for payment of the referral fee.

Plaintiff introduced several exhibits which were admitted into evidence without objection, including exhibit No. 5, plaintiff's referral slip which indicated that an appointment was made by plaintiff for an interview between the applicant and defendant on January 26, 1977, at 10 a.m. regarding the position of third-shift foreman.

At the close of plaintiff's case, defendant moved for a directed finding. The trial court granted defendant's motion on the grounds that "the evidence didn't conform to the complaint in that he [the applicant] was hired for a second shift foreman and not third shift foreman as stated in the complaint."

Plaintiff contends that its service in providing a qualified applicant for the position of shift foreman and defendant's subsequent act of hiring

Tate constituted a valid contract, and that it is therefore entitled to payment. Plaintiff also maintains that the time of day Tate was to work is immaterial to the contract as a whole, and the trial court abused its discretion in granting a directed finding on that basis. Defendant argues that no contractual relationship existed between the parties because there was no mutuality of agreement or consent to such relationship and no manifestation of assent by the parties to the terms of the agreement. Further, defendant states that no benefit accrued as a result of plaintiff's arrangement for the job interview because it had established previous contact with Tate through its own advertisement and because no understanding had been reached between the parties with respect to who would pay the fees.

■■ By "ancient definition," a contract is an agreement between competent parties, based upon sufficient consideration, to do or to refrain from doing a particular thing (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634), for the breach of which the law gives a remedy. (*Rynearson v. Odin-Svenson Development Corp.* (1969), 108 Ill. App. 2d 125, 246 N.E.2d 823.) The law, including statutes, existing at the time and place of the making of a contract is to be considered a part of that contract to the same extent as though expressly referred to or incorporated within its terms. (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 794, 305 N.E.2d 236, *appeal dismissed* (1975), 60 Ill. 2d 529, 331 N.E.2d 65.) At bar the evidence does not indicate that plaintiff required defendant to pay a fee or that defendant agreed to pay a referral fee. Furthermore, there was no evidence which showed any prior dealings between the parties from which such a contract to pay may be inferred. (See, *e.g., Beatrice Foods Co. v. Gallagher* (1964), 47 Ill. App. 2d 9, 197 N.E.2d 274.) The precise issue then becomes whether mere knowledge by a prospective employer that it is dealing with an employment agency, coupled with the agreement to interview a prospective employee, is sufficient to establish an implied contract requiring the prospective employer to pay a fee to the agency in the event that the applicant is subsequently hired.

The Illinois legislature has addressed the foregoing situation in the private employment agencies act (Ill. Rev. Stat. 1977, ch. 111, par. 901 *et seq.*) Section 5 of the act acknowledges that in the employment agency business, it is possible that the employment agency's referral fee may be borne solely by the job applicant, or solely by the prospective employer, or jointly by both of them in the form of a "split-fee." (Ill. Rev. Stat. 1977, ch. 111, par. 905.) In light of these possible arrangements, section 5 places an affirmative duty upon the employment agency to:

"* * * give to every applicant, who is sent out for * * * an interview with a prospective employer, a card or printed paper or

letter of introduction which shall be called a 'referral slip' containing the name of the applicant, the name and address of the employer to whom the applicant is sent for employment, * * *. *The referral slip shall contain a blank space in which the employment counselor shall insert and specify in a prominent and legible manner whether the employment service fee is to be paid by the applicant or by the employer, or in the case of a split-fee, the percentage of the fee to be paid by the applicant and the percentage of the fee to be paid by the employer,* * * *. In the event that the applicant is referred * * * to a prospective employer by telephone or telegraph, the referral slip shall be mailed to the applicant and to the prospective employer before the close of the business day on which the telephoned or telegraphed referral was given. * * *"[1] (Emphasis supplied.)

■■ In the present case, although the record indicates that a referral slip was timely mailed to defendant, the slip is silent as to who is to pay the fee, in violation of the statute. To interpret the statute to permit plaintiff to collect a fee from the defendant without any communication concerning fee payment responsibility would be repugnant to both the letter and spirit of the employment agencies act. Plaintiff has failed to establish an essential term of the putative contract between it and the defendant consonant with the terms of the statute. Although the trial court articulated a different reason for entering the directed finding for defendant, as in this case, such a reason is not material if the order entered is correct. *Keck v. Keck* (1974), 56 Ill. 2d 508, 514, 309 N.E.2d 217.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.

---

[1] Section 5 also establishes a voluntary procedure whereby parties to a fee dispute may avail themselves of a Department of Labor hearing with authority delegated to the Department to make reasonable recommendations for the resolution of such disputes. Apparently, the parties in this case did not choose to avail themselves of this remedy.