BOARD OF TRUSTEES OF THE FIREMEN'S PENSION FUND OF THE CITY OF PARK RIDGE *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF INSURANCE *et al.*, Defendants-Appellees.

First District (1st Division)   No. 81—2862

Opinion filed October 4, 1982.

Paul N. Keller, of Park Ridge, for appellants.

Tyrone C. Fahner, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

The Board of Trustees of the Firemen's Pension Fund of the city of Park Ridge, the Park Ridge Professional Firefighters' Association, and the city of Park Ridge (plaintiffs) brought this action for administrative review (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) of a final decision by the Director and a hearing officer of the Department of Insurance of the State of Illinois (defendants). The decision by the defendants, which required the plaintiff Board of Trustees to assess contributions to the pension fund upon the compensation paid to the city's firemen-paramedics, was affirmed by the trial court. Plaintiffs appeal.

A contract between the city of Park Ridge and the Park Ridge Professional Firefighters' Association covered the period from May 1, 1977, through April 30, 1979, and thereafter until changed by the parties. The contract provided for specific annual salaries for the city's firemen according to their rank. In addition, the contract provided that "As an incentive for Firemen to become certified and maintain qualifications as a Paramedic" the city agreed to pay up to 18 firemen who met established standards for paramedics "a bonus of $700 annually payable on a quarterly basis." This amount was payable until the recipient was permitted by the department head to become inactive as a paramedic after completion of a minimum term of four years.

A hearing was held on February 27, 1980. The hearing officer found the additional money paid to the firemen-paramedics was "salary" within the meaning of the Illinois Pension Code, and not a "bonus." The hearing officer recommended the Board of Trustees take steps to assess payroll deductions pursuant to section 4—124 of the Code (Ill. Rev. Stat. 1977, ch. 108½, par. 4—124). On May 1, 1980, the Director of the Department of Insurance adopted the findings of the hearing officer.

# I

Plaintiffs first contend Park Ridge paramedics are specifically excluded from the statutory definition of "fireman" as found in the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 4—101 *et seq.*). The Code defines "fireman" as (Ill. Rev. Stat. 1979, ch. 108½, par. 4—106(c)):

"*** any person employed by a city in its fire service as a fireman, fire engineer, marine engineer, fire pilot, bomb technician,

or scuba diver; and, in any of these positions whose duties also include those of a fireman and are certified in the same manner as a fireman in that city; ***."

Because this statute does not include "paramedics," plaintiffs take the position that the use of the statutory phrase "these positions" indicates all others must be excluded from this definition. (See *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 357 N.E.2d 582.) Plaintiffs also urge that although paramedics are also qualified as firefighters, they receive their compensation from the "ambulance service" division of the entire fire department budget and they do not perform routine firefighting duties. Therefore, plaintiffs maintain paramedics do not fall within this statutory definition.

■ We disagree. First, we do not agree the intention of the legislature in drafting section 4–106 was to include only those particular specialties named. It has been held such pension statutes are to "be liberally construed in favor of those to be benefited." (*Board of Trustees of the Policemen's Pension Fund of the Village of Oak Brook v. Department of Insurance* (1976), 42 Ill. App. 3d 155, 159, 356 N.E.2d 171.) Furthermore, the contract between the city of Park Ridge and the Firemen's Association specifically provides that only firefighters who met standards for paramedics "in addition to all other [f]iremen's responsibilities" would be certified as paramedics. It is also undisputed Park Ridge paramedics contributed to the firemen's pension fund out of the non-"bonus" portion of their salary. Thus, we cannot agree the statute provides that certification of firefighters as paramedics alters their status so as to exclude them from being "firemen."

## II

Plaintiffs next contend that even assuming a paramedic is a fireman within the framework of section 4–106(c), the additional paramedic compensation is not subject to pension deductions. Plaintiffs cite the section of the Pension Code which requires the Board of Trustees (Ill. Rev. Stat. 1979, ch. 108½, par. 4–124):

"[t]o assess each fireman [a specified percentage] of salary including longevity attached to the rank held by the fireman as established by the municipality appropriation ordinance, but does not include 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or any other cash benefit over and above the salary established by the appropriation ordinance, which sum is to be deducted and withheld from the pay or fees of each fireman so

assessed."

Plaintiffs contend the designation of the paramedic compensation as "bonus" pay specifically excludes it from the pension deductions as detailed in the above statute. Plaintiffs further contend the "paramedic bonus" is excluded by not being "salary attached to the rank held by the fireman."

In our opinion, the $700 paid Park Ridge paramedics must be construed as "salary" rather than "bonus." Our courts define "salary" as " 'a fixed, annual, periodical amount payable for services and depending upon the time of employment and not the amount of services rendered.' " (*Board of Education v. Chicago Teachers Union Local 1* (1980), 89 Ill. App. 3d 861, 866, 412 N.E.2d 587, *reversed on other grounds* (1981), 88 Ill. 2d 63, 430 N.E.2d 1111, quoting *In re Sanitary District Attorneys* (1932), 351 Ill. 206, 274, 184 N.E. 332. See also *Jahn v. City of Woodstock* (1981), 99 Ill. App. 3d 206, 425 N.E.2d 490.) The additional sum "of $700 annually" is paid to paramedics "on a quarterly basis" according to the contract. Firemen are to receive this additional amount "prorated based upon the date they complete all training \*\*\* and are authorized \*\*\* to assume full [p]aramedic responsibilities." The paramedic continues to receive this amount until he requests, and is permitted, to become "inactive as a [p]aramedic." These factors demonstrate that when the fireman is certified as a paramedic, his fireman's salary including the paramedic sum becomes the total amount due him under the contract.

As a complete contrast, "bonus" is defined as "money \*\*\* given in addition to the usual compensation." (Webster's Third New International Dictionary 252 (1971).) The gap between an ordinary bonus and a regular salary is widened by legal definitions of "bonus." Black's Law Dictionary 165 (5th ed. 1979) contains several definitions of "bonus." For example: "A gratuity to which the recipient has no right to make a demand." Another definition is: "A premium or extra or irregular remuneration in consideration of offices performed or to encourage their performance." Or, "An addition to salary or wages normally paid for extraordinary work."

Thus, the entire total received constitutes the fireman's "salary" as defined by the statute. Plaintiffs urge such a finding runs directly contrary to the designation of this sum by the parties as "bonus." We are not, however, bound by the terminology used by the parties. We are required to look beyond that to the actual legal character of the compensation. (See *Commonwealth Life & Accident Insurance Co. v. Board of Review* (1953), 414 Ill. 475, 483-84, 111 N.E.2d 345.) In reaching this conclusion we are constrained to look "to the facts

rather than to the self-serving characterizations of the parties." *Mississippi River Fuel Corp. v. Illinois Commerce Com.* (1953), 1 Ill. 2d 509, 524, 116 N.E.2d 394.

Plaintiffs cite *Oak Brook*, 42 Ill. App. 3d 155, in support of their contentions the paramedic compensation is neither "salary" nor "salary attached to the rank" of paramedic. In *Oak Brook*, the dispute was whether "merit increases" were exempt from policemen's and firemen's pension deductions under sections 3—125 and 4—124 of the Pension Code (Ill. Rev. Stat. 1973, ch. 108½, pars. 3—125 and 4—124). The *Oak Brook* court noted the contract between the village and the municipal employees provided for salary increases of up to 10% per year based on departmental recommendation. The pay increase was then "added to the employee's former salary and that *total was appropriated by ordinance as the annual salary for the employee.* It merged into and became the employee's ordinary salary for the next year, was permanent and vested in the employee." (42 Ill. App. 3d 155, 157.) These increases replaced both longevity and cost-of-living pay increases. This court ruled these salary increases were subject to pension deductions and differed from the "merit pay" excluded by the Code. We held the intention of the legislature was to exclude "merit pay" over and above the salary established by the municipal ordinance.

Plaintiffs attempt to differentiate this ruling from the instant case by arguing the paramedic "bonus" is neither permanent nor vested in the Park Ridge firefighter. Plaintiffs claim the bonus may be terminated at will if the individual is deemed no longer qualified and also note the instant agreement covered only a two-year period. Plaintiffs also deny the bonus "merges into" the salary for the following year. Rather, plaintiffs assert salary increases will be calculated only on the employee's base salary, and not the salary plus the bonus.

■ We do not find these attempted distinctions convincing. First, under the contract between the parties, once a firefighter is certified as a paramedic, he is entitled to the additional compensation unless he requests inactive status or permits his qualifications to lapse. The contract, while effective from May 1, 1977, through April 30, 1979, remains effective "from year-to-year thereafter until changed by mutual agreement." The funds for the "bonus" are specifically appropriated in the Park Ridge ordinance. Thus, we reject the contention the *Oak Brook* case does not support the decision of defendants.

### III

Plaintiffs urge that Rule B3—125 promulgated by the Department

on March 30, 1979, lacks legislative authority. Section 3 of the rule provides:

> "If the municipality's appropriation ordinance assigns a salary to a policeman's or fireman's rank that salary, as regularly received by the policeman or fireman, shall be used to determine salary contributions and pension computations. Otherwise, salary shall include all regularly received salary attached to rank. The word 'rank' is not limited to civil service ranks but includes all specialty ranks such as 'Detective,' 'Juvenile Officer,' 'Special Instructor,' 'Shift Commander,' 'Training Officer,' 'Chief,' 'E.M.T.,' 'Paramedic,' 'Range Officer,' 'Mechanic,' etc., as well as classifications devoting compensation for educational and other work-related achievements."

Undoubtedly it lies within the scope of the legal authority of an administrative body to promulgate rules to clarify the administrative function. The statute authorizes the Department to make "reasonable rules and regulations ***." (Ill. Rev. Stat. 1979, ch. 108½, par. 22—501.1.) However, as plaintiffs properly urge, an administrative body may not alter or add to statutory provisions by exercise of its rule-making power and all administrative "rules and regulations must be authorized by statute." *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 60, 387 N.E.2d 320, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 87.

■ But, where an administrative agency is charged with enforcement of a statute and is duly authorized to promulgate regulations thereunder, the administrative interpretation of that statute, although not controlling, "is entitled to great weight." (*R. E. Joos Excavating Co. v. Pollution Control Board* (1978), 58 Ill. App. 3d 309, 313, 374 N.E.2d 486, *appeal denied* (1978), 71 Ill. 2d 614.) In *People ex rel. Watson v. House of Vision* (1974), 59 Ill. 2d 508, 514-15, 322 N.E.2d 15, *cert. denied* (1975), 422 U.S. 1008, 45 L. Ed. 2d 671, 95 S. Ct. 2631, the court pointed out that a reasonable and consistent construction of a statute by the administrative agency charged with its enforcement may create "a presumption of correctness which is only slightly less persuasive than a judicial construction of the same act."

■ We see no basis for the contention by plaintiffs that the above regulation goes beyond the holding of *Oak Brook*. We see no special significance in the use of the term "rank" in the departmental rule. We also reject the contention of plaintiffs that the rule in any manner gives the Department discretion in determining what compensation is or is not subject to pension requirements. In our opinion, the rule does not exceed the proper authority of the Department and it is a

valid exercise of administrative authority.

## IV

Plaintiffs close their brief with the argument that a valid contract concerning the paramedic "bonus" exists between the city of Park Ridge and the Firefighters' Association and that it was beyond the legal power of the defendant to interfere with this contract. We reject this contention completely. The contract between the city and the Firefighters' Association is dated January 12, 1978. It purports to cover wages and benefits from May 1, 1977, through April 30, 1979, and from year-to-year thereafter until changed by mutual agreement. We have above quoted the pertinent provisions of this contract which simply refer to a payment to 18 eligible firemen of "a bonus of $700 annually payable on a quarterly basis." The contract contains no specific provision regarding the payment of pension benefits which ordinarily would accrue under the pension statute above quoted.

The excellent opinion in *Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833, 390 N.E.2d 1281, is cited and relied upon by plaintiffs. But, the opinion expressly negates this argument of plaintiffs. *Kraus* summarized its holding (72 Ill. App. 3d 833, 850):

> "However, once again, all we have decided is that a Pension Code modification changing the basis upon which pension benefits are directly determined cannot be applied to diminish the benefits of those who became members of the system prior to the statute's effective date."

Plaintiffs also depend upon the decision in *Carroll v. Grumet* (1952), 281 App. Div. 35, 117 N.Y.S. 553. However, *Kraus* cites *Carroll* only as holding "that an agreement whereby a cost of living allowance is paid and accepted by a public employee on condition that it will not be regarded as salary for pension purposes was valid and binding on the employee." (72 Ill. App. 3d 833, 849-50.) The situation before us is far different from that in *Carroll*. There is nothing in the written contract between the city and the labor association which exempts the payment to the paramedics as free from the pension obligation. The contract does not concern itself in any manner with the payment of pension contributions.

Plaintiffs urge the Department has no authority to interfere with the contract between the city and the union. We find no interference here. The contract has no relation in any particular to the pension statute or to the regulations promulgated thereunder by the defendant.

Plaintiffs next argue that article I, section 16, of the Illinois Con-

stitution of 1970 and article 1, and section 10 of the United States Constitution prohibit any law which would invalidate or impair obligations expressed in contracts in existence when the laws were passed. This is a valid concept, but it has no application to the case at bar.

■ In making this argument plaintiffs completely overlook a binding legal principle. The pension statute in question was adopted by the legislature in 1963 long prior to the execution of the labor contract. In *Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 544, 165 N.E.2d 286, the supreme court held:

> "It is settled law that all contracts for the purchase and sale of realty are presumed to have been executed in the light of existing law, and with reference to the applicable legal principles. (91 C.J.S. 1032.) Thus, the law existing at the time and place of the making of the contract is deemed a part of the contract, as though expressly referred to or incorporated in it. [Citations.]"

Many other cases have repeated this sound and basic principle regarding the accepted rule that a contract includes statutory provisions and existing principles of law as though they had been specifically incorporated within the contract terms. *Polytechnical Consultants v. Lind Plastic Products, Inc.* (1980), 82 Ill. App. 3d 472, 474, 402 N.E.2d 869; *Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 131, 390 N.E.2d 72.

As we have carefully attempted to point out, the basic problem here is the insistence by the city that since the word "bonus" is used in the labor contract, all pension statutes and regulations are superseded.

We find no merit in the contentions of plaintiffs and the order appealed from is accordingly affirmed.

Order affirmed.

CAMPBELL, P.J. and O'CONNOR, J., concur.