CHESTER O. HALE *et al.*, Plaintiffs-Appellants, *v.* LULA L. AULT *et al.*, Defendants-Appellees.

Third District   No. 79-481

Opinion filed March 31, 1980.—Rehearing denied May 13, 1980.

CRAVEN, J., dissenting.

William R. Stengel, Jr., of Coyle, Gilman & Stengel, of Rock Island, for appellants.

Richard Whitman, of Kritzer, Stansell, Critser & Whitman, of Monmouth, and Stephen Holland, of West, Main & Hurst, of Bushnell, for appellees Lula L. Ault and Russell F. Ault.

David Simpson, of McLaughlin, Hattery & Simpson, of Galesburg, for appellees T. J. Coffman and Joyce Coffman.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This exasperatingly endless litigation now makes a fourth appearance before this court, and with reluctance we remand it to the trial court for further proceedings in the almost certain knowledge that we will see Act V of the drama in due time.

The prior opinions, *Hale v. Ault* (1974), 24 Ill. App. 3d 10, 321 N.E.2d 151 (*Hale I*), and *Hale v. Ault* (1977), 51 Ill. App. 3d 634, 367 N.E.2d 93 (*Hale II*), detail most of the factual background of the dispute, but for purposes of clarity a complete resumé appears to be in order.

Some people named Coffman agreed to sell by contract for deed farm land in Warren County to some people named Sands. The contract was made in 1970 with a purchase price of $79,070, to be paid in semi-annual installments. The Sandses, as buyers, with the consent of the Coffmans, assigned their interest in the contract to the Hales on May 5, 1972. Hales made no payments under the contract, and on August 21, 1972, Coffmans sent them a notice declaring that unless defaults were made good within 30 days, a forfeiture of the contract would take place. No payments having been made, Coffmans sent Hales a notice of forfeiture on September 25, 1972, and four days later, September 29, 1972, conveyed the premises to Aults.

Hales lived in Moline but had planted crops and were in possession of the premises. On October 1, 1972, Aults entered upon the farm and began to harvest the crops planted by Hales. This was without the consent of the Hales and against their objections. Hales brought an action in forcible entry against the Aults (Ill. Rev. Stat. 1971, ch. 57, par. 1 *et seq.*). The trial court found in favor of the Hales, and this led to the first appeal, *Hale I*, in which this court held that there was no appealable order and dismissed the appeal.

Two facts of cardinal importance should be noted concerning *Hale I*: (1) because of the jurisdictional defect the appellate court never reached the merits of the controversy; and (2) the essential holding of the trial court was that the notice of forfeiture was ineffective because of timeliness.

Following the opinion in *Hale I* which was handed down on November 14, 1974, the Hales brought the instant litigation against the Aults and the Coffmans. Count I is for specific performance of the contract and alleges that Hales made a tender of all amounts due under the contract to Aults on December 12, 1974. Count II is for an accounting and alleges that Aults have been in possession since October 1, 1972.

Both defendants filed answers and affirmative defenses. Coffmans denied the tender and alleged that Hales were in default and set up the notices of default and forfeiture given to them as recited above. Aults likewise denied the tender and set up the forfeiture by Hales.

Hales filed a motion to strike the affirmative defenses and claimed that *Hale I*, having been decided in their favor, conclusively established that there had been no forfeiture.

Both Aults and Coffmans filed motions for summary judgment. Their history is somewhat tangled since at various times in these proceedings they were denied, refiled and amended. In substance, the allegations by the Aults were that Hales were clearly in default. Hales responded with two counteraffidavits; one set up again the *res judicata* claim arising out of *Hale I*; the other made by Hale himself averred that he had tendered all amounts due on two occasions, and that the assignment had altered the terms of the contract in that Coffmans had told him that they wanted a lump sum payment rather than installments. Aults filed a reply to Hale's affidavit claiming that it was in violation of the parol evidence rule.

Coffman's motion for summary decree followed essentially the allegations of the Ault motion for summary judgment, and added an affidavit by Coffman that he had never told Hale that he did not have to comply with the terms of the contract, including the due dates of the semi-annual payments.

The proceedings then went into abeyance when Ault filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110,

par. 72), attacking the forcible entry judgment rendered in favor of the Hales. That matter was decided by this court in Hale II on June 14, 1977. The petition was a three-pronged attack on the forcible entry judgment and was allowed by the trial court. This court reversed, holding that the judgment was not void and hence not subject to collateral attack via the section 72 petition and order.

Following the remand in *Hale II*, proceedings on the trial level again commenced. Aults filed a revised motion for summary judgment as to both counts of the complaint. The motion essentially reiterated their prior arguments. Aults also asked leave to file two counterclaims, one sounding in ejectment and the other in forcible entry. Hales filed a motion for voluntary dismissal as to the Coffmans under section 52 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 52). Coffmans objected to the dismissal on the grounds that their motion for summary decree cut off any option to dismiss under section 52. Hales filed a further counteraffidavit to the motion for summary judgment in which they set up late payment of a tax bill, and argued that this constituted a waiver of the time-is-of-the-essence provision of the contract.

On October 6, 1978, the trial court entered a series of rulings disposing of matters then pending before it as follows:

(1) It denied the Hale motion to dismiss Coffmans under section 52.

(2) It denied the Hale motion to strike the affirmative defenses concerning the *res judicata* effect of *Hale I*.

(3) It allowed the Ault revised motion for summary judgment and the Coffman motion for summary decree.

(4) It allowed Aults to file their counterclaims.

(5) It struck Hale's affidavit concerning the tax bill as a violation of the parol evidence rule.

On October 19, 1978, about two weeks following the orders of the trial court, which appeared to tie up all the loose ends of the litigation, Hales moved for and were granted leave to file a first amended complaint against the Aults only. This complaint, like the original one, was in two counts, one for specific performance and another for accounting from October 1, 1972, to February 7, 1978. The latter date was made by later amendment which set up that Hales had been restored to possession by a writ of assistance granted in *Hale II*.

Aults responded to the first amended complaint by filing a motion for summary judgment which was essentially similar to all those previously filed. They also filed two counterclaims like the previous ones, ejectment and forcible entry, but added the fact that they were in possession under a lease from Hales for one year expiring March 1, 1979.

Coffmans, who were not made defendants to the first amended

complaint, asked leave to intervene and to file a motion for summary judgment.

Another chapter in this legal saga then was written. On November 6, 1978, Hales filed a notice of appeal from the orders entered October 6, 1978. Several days later there was a hearing on motions directed at Hale's first amended complaint, and the trial court pointed out that it had no jurisdiction in view of the notice of appeal. Similarly, on February 8, 1979, when Hales moved in the trial court for a finding under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)), the trial court dismissed the motion for lack of jurisdiction. Finally on March 6, 1979, this court dismissed the appeal of November 6, 1978, for lack of an appealable order.

The scene then shifted back to the trial court where Hales filed a motion to dismiss Aults' counterclaims on the basis that one in possession cannot maintain suits either in ejectment or in forcible entry.

On May 24, 1979, some 4½ years after the filing of the instant litigation, some 6½ years after the original forcible entry suit which was its genesis, and after three journeys through the appellate court, none of which reached the merits, final orders were entered in the trial court from which this appeal reaches us. Briefly summarized those orders were as follows:

(1) Coffmans were permitted to intervene as to the first amended complaint.

(2) Aults' motion for summary judgment as to the first amended complaint was allowed.

(3) Hales' motion to strike Aults' counterclaims in ejectment was entered for Aults on those counterclaims.

(4) Coffmans' motion for summary decree as to the original complaint was allowed.

(5) Hales' motion to strike the counterclaims to the original complaint was denied.

Hales have appealed this order of May 24, 1979, as well as the former order of October 6, 1978. We are thus faced with four principal issues: (1) Whether it was error for the trial court to deny Hale's motion to strike the affirmative defenses, the motion being based on the purported effect of *res judicata* growing out of the decision in *Hale I*; (2) whether it was error to grant the motions of Aults and Coffmans for summary judgment: (3) whether it was error to deny Hale's motion for voluntary dismissal of Coffmans; and (4) whether it was error to deny Hale's motion to strike the Ault counterclaims in ejectment and forcible entry. We have concluded that the trial court was correct in denying the motion to strike the affirmative defenses, but that it was in error in the other three rulings.

We believe that much of the confusion surrounding this case stems from too broad a reading of the trial court's opinion underlying *Hale I* and

our opinion in *Hale II*. The trial court in a forcible entry proceeding decided *a* question of title, not *the* question of title. *Hale II* held that even though deciding *a* question of title in forcible entry may be erroneous, it is not subject to collateral attack. Hales contend that the decisions in *Hale I* and *Hale II* make *the* question of title *res judicata*.

■■ The doctrine of *res judicata* applies only to such matters as are necessary to a court's decision. It does not apply to matters which are unnecessary even though a court spoke to them, or might even have decided them.

It must be borne in mind at all times that the instant litigation is one of specific performance while the prior proceedings were in forcible entry. The general requirements to maintain an action of specific performance are too well known to require any extended citation of authority here. In the posture of the pleadings before us now, the essential question is whether Hales were in default and had forfeited the contract. It is elemental that one seeking specific performance must have fulfilled all his obligations under the contract. Specific performance is an equitable remedy, and it is a truism that equity abhors a forfeiture, and readily yields to the principle of compensation if fair dealing and good conscience seem so to demand.

A vendee-plaintiff in a specific performance action, if successful, will necessarily obtain title as a result of the judgment, and his own performance therefore becomes a critical inquiry.

Forcible entry, on the other hand, determines only a right to possession. A plaintiff in forcible entry need not establish title in himself, or even in the defendant. The inquiry is who has the superior right to possession of the two. Forcible entry can be maintained even by a squatter. (*Hammond v. Doty* (1900), 184 Ill. 246, 56 N.E. 371.) A forcible entry action may at times tangentially involve questions under a contract for deed (*Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 263 N.E.2d 833), but the ultimate determination is one of possession, a quantum of estate far less than title.

■ *Hale I*, then, established only a right to possession, and *Hale II* established only that the prior determination was not subject to collateral attack. One question of Hales' performance was involved because of the factual nature of the forcible entry proceeding, but the full question of Hales' performance in order to maintain specific performance has never been litigated fully in all this legal marching and countermarching. For example, it has never been determined on the merits whether Hales were in breach of the contract, breach being a different concept and anterior to the concept of forfeiture. Even assuming *arguendo* that the question of forfeiture may be a closed issue, it could develop on trial that the forfeiture was void because there was no antecedent breach by Hales.

The trial court was therefore correct in denying the Hale motions to strike the affirmative defenses of breach and forfeiture. These are entitled to a full hearing on their merits in the light of a specific performance action apart from a summary procedure in forcible entry.

■■ The allowance of the summary judgment motions was erroneous. The affidavits of the parties and the documents in the file reveal serious factual questions to be resolved. For example, the assignment and acceptance provides that Coffmans would convey "upon receipt of $78,009.52, together with interest computed at 7% per annum until paid." The original contract provided for 9% interest and semi-annual payments. A question of ambiguity hence arises as to whether the assignment was intended to require a lump sum payment or whether the semi-annual payments were to continue. Upon such ambiguity, parol evidence would be admissible by way of explanation and interpretation. There is also a question of a late tax bill and whether this might amount to a waiver of the time-is-essence provision. Summary judgment should be entered only when there is an absence of a genuine question of material fact. No such absence exists here.

■■ The denial of the motion to dismiss Coffmans under section 52 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 52) was likewise error. Section 52 confers an absolute right on a plaintiff to dismiss "* * * before trial or hearing begins * * *." *North Park Bus Service, Inc. v. Pastor* (1976), 39 Ill. App. 3d 406, 349 N.E.2d 664, held that a summary judgment proceeding was not a trial or hearing within the meaning of the statute. Therefore, Hales had the right to dismiss Coffmans, since as we have repeatedly pointed out, there has been no trial on the merits at any time in this cause.

This does not mean, however, that Coffmans are to be terminated permanently. We note from the record, although the matter is not touched on in the briefs of the parties, that Coffmans sought leave to intervene as to the first amended complaint. Intervention is governed by section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26.1), and in this case is permissive. We have serious reservations as to whether Coffmans have any interest to defend in this case. The first amended complaint did not purport to incorporate the original complaint, and to that extent the original complaint stands as vitiated. Coffmans were not made parties defendant to the first amended complaint and therefore there was no predicate for a voluntary dismissal, but this does not resolve the question as to whether they might intervene by permission. The trial court did not exercise its discretion on this question, and the case must be remanded for that exercise.

■■ The final matter to be resolved is the Aults' counterclaims on forcible entry and ejectment. It will be remembered that the Aults were in

possession of the premises under a lease from the Hales at the time the counterclaims were filed. There is no authority, to our knowledge, that permits one who is in possession to bring a forcible entry proceeding against one who is out of possession. As indicated above, the entire remedy is to place one in possession who has been wrongfully ousted. To say that one in possession may maintain the action would do violence to the statute.

■■ The situation is similar with regard to the ejectment action. In *Reed v. Tyler* (1870), 56 Ill. 288, the supreme court held that a party occupying land may not bring an ejectment action against one not in possession but who claims superior title. The trial court was in error in its rulings on these counterclaims in denying Hales' motions to dismiss them and entering summary judgment for Aults on them.

The action of the trial court in denying Hales' motions to strike the affirmative defenses is affirmed; its actions in entering summary judgment for the Aults as to the first amended complaint and on their counterclaims are reversed; its action in denying Hales' motion to dismiss Coffmans is likewise reversed; the cause is remanded to the circuit court of Warren County with directions to proceed to a hearing on the merits under the first amended complaint and the answers and affirmative defenses thereto, after first conducting a hearing on the petition of the Coffmans to intervene.

Affirmed in part, reversed in part, and remanded with directions.

GREEN, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:
I dissent.

By ignoring the effect of the Hales' two tenders and the finding in the original forcible entry and detainer action that the Hales were not in default, the majority unnecessarily prolongs this cycle of litigation and prevents its decision here, *Hale III*, from being *Hale the Last*.

This court determined in *Hale II* that the trial court's order in that first forcible entry and detainer action brought by the Hales against the Aults is immune from collateral attack and therefore remains the law of the case. In that order the trial judge found the sole question to be whether the Hales had been properly notified of the default and impending forfeiture for missing a payment. Although specifying that time was of the essence, the land sale contract did not state the method for giving notice of forfeiture. The trial court ruled that the notice of default and the forfeiture were ineffective. The Hales had not been given the 30 days to pay the balance due promised by the Aults in their notice of

default. Thus, the Hales were not in default, yet the majority fails to give this *res judicata* effect. The court also ruled that the Hales rather than the Aults had the right to possess the farm.

The Hales are entitled to specific performance; the trial court finding of March 11, 1974, shows that they were not in default, and *Hale I* and *Hale II* have set this result in cement. In April and December 1974, the Hales tendered the full contract price plus accrued interest. Regardless of whether installment or lump sum payment was required, the tenders were adequate. Because the tenders were made before an effective declaration of forfeiture, we should grant the Hales specific performance of the contract. (*Kelly v. Germania Savings & Loan Association* (1963), 28 Ill. 2d 591, 192 N.E.2d 813.) The Hales' two tenders—both refused by the Aults—sufficiently show that they were ready, willing, and able at all times to perform their part of the contract. (*Wolford v. James E. Kolls Investment Co.* (1978), 61 Ill. App. 3d 405, 377 N.E.2d 1314.) Refusal of a proper tender excuses further tenders. (*Lang v. Parks* (1960), 19 Ill. 2d 223, 166 N.E.2d 10; *McGrath v. Davis* (1966), 75 Ill. App. 2d 19, 221 N.E.2d 54.) Because Supreme Court Rule 366(a) (73 Ill. 2d R. 366(a)) authorizes this court to enter any orders necessary to dispose of the case and resolve the conflict, I would order the issuance of a decree of specific performance conveying the farm by warranty deed from the Aults to the Hales. I would remand this case only for an accounting of the rents and profits owing the Hales by reason of the Aults' possession of the property.

A review of this record and the admitted long history of this litigation can only lead to the conclusion that ultimately the Hales will be entitled to specific performance and the parties must have an accounting. Indeed, the majority opinion here practically concedes as much. This litigation, like all litigation, should terminate sometime, and we need remand only for a limited accounting purpose.