S & D SERVICE, INC., Plaintiff-Appellee, v. 915-925 W. SCHUBERT CON-
DOMINIUM ASSOCIATION, Defendant-Appellant.

First District (2nd Division) No. 84—1035

Opinion filed April 23, 1985.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Howard A. London, of counsel), for appellant.

Glenn Seiden & Associates, of Chicago (Glenn Seiden and James A. Graham, of counsel), for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is a forcible entry and detainer action involving a dispute over possession of a laundry room located in the 915-925 W. Schubert Condominium building. Plaintiff-lessee filed the forcible action against defendant-lessor after defendant had cancelled a lease agreement with plaintiff pursuant to the Illinois Condominium Property Act (Ill. Rev. Stat. 1979, ch. 30, par. 318.2).

On May 13, 1981, prior to the election of the Condominium Association's first board of directors, plaintiff entered into a laundry room lease agreement with the West Goethe Development Company, defendant's predecessor, to operate the laundry room at 915-925 West Schubert, Chicago. The lease term extended from June 15, 1981, through June 14, 1986. On September 9, 1981, the condominium declaration was duly recorded.

On August 1, 1983, Janice Wegner, the vice-president of the Condominium Association, sent a notice to all Condominium Association members informing them of a "special association meeting" to decide whether to cancel plaintiff's laundry room lease pursuant to section 18.2 of the Condominium Property Act (Condominium Act). On September 18, 1983, the Condominium Association held the meeting to vote on the cancellation of the lease. The minutes of the meeting recite that 21 association members voted to terminate the lease. The condominium property report indicates that there are 29 units in the condominium complex. According to defendant, the 21 votes represented roughly 65.7 percent of the total unit votes.

On October 11, 1983, the Condominium Association sent plaintiff a letter, by certified mail, return receipt requested, notifying it of the cancellation of its lease effective December 1, 1983. The letter requested plaintiff to remove its laundry equipment by November 31, 1983. The Condominium Association subsequently disconnected

and removed plaintiff's equipment and installed its own.

On January 27, 1984, plaintiff filed a forcible action claiming its entitlement to possession of the laundry room premises. The Condominium Association filed its answer denying that it wrongfully withheld possession from plaintiff, and raised as an affirmative defense its cancellation of plaintiff's lease pursuant to section 18.2 of the Condominium Act. After a bench trial held on April 3, 1984, the court found for plaintiff, ordering that plaintiff was entitled to possession, apparently because defendant failed to follow the Forcible Entry and Detainer Act when it cancelled plaintiff's lease, and ordered defendant to remove its machines. Defendant had argued that plaintiff had no right to possession of the premises due to the cancellation of the lease pursuant to the statute. On April 4, 1984, defendant filed a post-trial motion for reconsideration and for leave to amend its answer by adding a counterclaim for possession. Defendant argued it wanted to conform its pleadings to the proof. The trial court denied the motion. Defendant appeals both the judgment granting possession to plaintiff and the denial of its post-trial motion.

■■ ■ The standard of review in an action brought under the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1983, ch. 110, par. 9—101 *et seq.*) to recover possession is, generally, whether the verdict was against the manifest weight of the evidence. (See *Geleto v. Giglietti* (1976), 40 Ill. App. 3d 226, 228, 352 N.E.2d 1.) For the following reasons, we find that the trial court's decision awarding possession to plaintiff was against the manifest weight of the evidence.

The only matter to be resolved in a proceeding brought under the Forcible Entry and Detainer Act is the right to possession. (*Hale v. Ault* (1980), 83 Ill. App. 3d 78, 83, 403 N.E.2d 635.) The question of title is not properly litigated in such an action (*Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 9, 424 N.E.2d 56), and, as between the plaintiff and defendant, the inquiry only focuses on who has the superior right to possession. (*Hale v. Ault* (1980), 83 Ill. App. 3d 78, 83, 403 N.E.2d 635.) The defendant to the suit may, by way of general denial, offer evidence in defense of the action. (Ill. Rev. Stat. 1983, ch. 110, par. 9—106.) Thus, the defendant can challenge the plaintiff's claimed right of possession by way of an affirmative defense. *Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 364, 390 N.E.2d 417.

In the present action, the defendant raised as an affirmative defense the termination of plaintiff's lease by virtue of section 18.2 of the Condominium Act (Ill. Rev. Stat. 1979, ch. 30, par. 318.2). At

the time the lease was executed, section 18.2 provided in pertinent part:

> "Any contract, lease, or other agreement made prior to the election of a majority of the board of managers other than the developer by or on behalf of unit owners, individually or collectively, the unit owners' association or the board of managers, which extends for a period of more than 2 years from the recording of the declaration, shall be subject to cancellation by more than ½ of the votes of the unit owners other than the developer cast at a special meeting of members called for that purpose during a period of 90 days following expiration of the 2 year period. During the 90 day period the other party to the contract, lease, or other agreement shall also have the right of cancellation." (Ill. Rev. Stat. 1979, ch. 30, par. 318.2.)

That portion of section 18.2 has since been amended, effective July 1, 1984, requiring notice to the unit owners, at least 60 days prior to expiration of the two-year period, by the board of managers or by the developer if he still controls, of the unit owners' right to terminate long-term contracts under this section at a membership meeting. That amendment, however, is not applicable to this action. (See Ill. Ann. Stat., ch. 30, par. 318.2(e) (Smith-Hurd 1984-85 Supp.).) Though no Illinois cases have interpreted what is now subdivision (e) of section 18.2, it is readily apparent that such a provision is designed to protect condominium owners from so-called "sweetheart deals" or self-dealing contracts between developers and their associates. (See Krebs, *Legislative Response to "Sweetheart" Management Contracts: Protecting the Condominium Purchaser*, 55 Chi. Kent L. Rev. 319 (1979); 15 U.S.C. secs. 3607, 3608 (1982) (Condominium and Cooperative Abuse Relief Act of 1980).) Often, condominium developers enter into long-term contracts with either associates or entities controlled by the developer to provide management services or leasing arrangements for recreational or other facilities. These contracts are usually noncancellable when assigned to the condominium management association and, later, they prove to be especially advantageous to the developer and economically harsh to the condominium owners. The Illinois statute and the Federal counterpart are designed to provide relief from such arrangements to the condominium owners.

Plaintiff's lease was executed by the developer on May 13, 1981, and extended through June 14, 1986. The lease was cancelled by the Association, with the appropriate number of votes, at a special

meeting held on September 18, 1983. Thus, the lease fell within the purview of the statute and was cancelled within the 90-day period following the two-year period, with the requisite number of votes, at an appropriately called meeting. The law in this State is settled that, in the absence of language to the contrary, laws and statutes in existence at the time a contract is executed are considered a part of the contract as though they were expressly incorporated therein. (*Polytechnical Consultants v. Lind Plastic Products, Inc.* (1980), 82 Ill. App. 3d 472, 474, 402 N.E.2d 869; *Hindu Incense Manufacturing Co. v. MacKenzie* (1949), 403 Ill. 390, 392, 86 N.E.2d 214.) Additionally, contracting parties are presumed to have entered into the contract with a knowledge of the existing law as it relates to their agreement. (*Schlosser v. Jursich* (1980), 87 Ill. App. 3d 824, 826, 410 N.E.2d 257.) By operation of law, the existing laws, statutes and ordinances become implied terms of the contract. By entering into such an agreement, and by not specially excluding or modifying the effects of the various laws, the contracting parties are deemed to have accepted these laws as part of their agreement. (See *Burns v. Regional Transportation Authority* (1982), 112 Ill. App. 3d 464, 472-73, 445 N.E.2d 348.) Consequently, plaintiff acquiesced in the provisions of section 18.2 as an implied term of its lease with the developer in the absence of contrary language in the lease. As such, the lease was terminated when plaintiff received defendant's letter of cancellation by certified mail. Accordingly, when plaintiff filed its forcible action in January of 1984, it had no right to possession because its lease had been terminated pursuant to the implied term of the lease, *i.e.*, section 18.2. Since the termination of the lease was raised by defendant as a affirmative defense, we hold that defendant's right of possession was superior to plaintiff's, and that the trial court erred in awarding possession to plaintiff.

■ Plaintiff claims, however, that its right to possession is superior to defendant's because defendant failed to follow the Forcible Entry and Detainer Act when it entered the laundry room and removed plaintiff's equipment. Plaintiff's argument is buttressed by the decision of the trial court concluding that defendant was required to file a forcible action in order to enforce its section 18.2 rights. We note that the Condominium Act does not set the Forcible Entry and Detainer Act up as a condition precedent to the efficacy of section 18.2 and, given that legislative silence, we shall not read such a precedent into the statute. (*Kelley v. Astor Investors, Inc.* (1984), 123 Ill. App. 3d 593, 599, 462 N.E.2d 996.) Plaintiff's claim of superior possession due to defendant's failure to file a forcible

action is entirely without merit.

Section 18.2 is a part of plaintiff's lease as if it were written therein. By plaintiff's own consent manifested in that agreement, it gave defendant and itself a right to cancel the lease during the 90-day period subsequent to the two-year period. When plaintiff received defendant's notice of cancellation, plaintiff's right of possession expired and, as a tenant, it had a duty to surrender possession of the leased premises. (*Poppers v. Meagher* (1893), 148 Ill. 192, 200, 35 N.E. 805.) When plaintiff did not surrender possession, defendant did not have the right to enter the premises and remove plaintiff's equipment. (*Phelps v. Randolph* (1893), 147 Ill. 335, 340, 35 N.E. 243.) The fact that defendant did enter the premises merely opened defendant up to a suit for damages. (*Wilder v. House* (1868), 48 Ill. 279, 280.) Contrary to plaintiff's argument, when it filed its forcible action against defendant, plaintiff had no right to possession due to defendant's entry because the lease was duly cancelled and, as stated, the only matter litigated at the forcible action is the right to possession. Plaintiff could have proved up damages against defendant because of defendant's entry, but plaintiff failed to do so. Plaintiff's right of damages against defendant, if any, did not clothe plaintiff with a superior right to possession. Plaintiff's argument that such a ruling by this court will merely encourage hostile self-help efforts by others is groundless in that any person so acting could be liable in a subsequent tort action for damages. The deterrent effect of facing a suit for damages is, to us, sufficient to encourage persons to avail themselves of proper legal procedures and remedies.

■ Plaintiff also claims that section 18.2 is unconstitutional because it is overbroad, improperly binds only a limited portion of the population and impermissibly impairs the obligation of contract. Plaintiff complains that the Condominium Act is overbroad because it strikes at all contracts, regardless of their reasonableness, and is inappropriately limited in its application because it does not allow for any reciprocal right of cancellation inuring to plaintiff if circumstances later work to its economic detriment. Plaintiff's argument that the Condominium Act impermissibly impairs the obligation of contract is rather obscure, but suggests that the enactment goes beyond the State's police power in that it attacks all contracts; such "general interference" with the right to contract is not permitted. Our analysis of section 18.2 of the Condominium Act persuades us that plaintiff's constitutional attack must fail.

We note initially that in Illinois, condominiums are creatures of

statute. As such, condominiums are necessarily subject to the control and regulation of the legislature. Under these circumstances, the legislature is given broad discretion in its regulatory efforts, especially in fashioning remedies necessary to protect the interests of those persons involved.

Focusing on plaintiff's contention that section 18.2 is inappropriately limited in its application because it does not provide for any reciprocal right of cancellation, we turn to the exact language of section 18.2 that states in relevant part:

> "During the 90-day period the other party to the contract, lease, or other agreement shall also have the right of cancellation." (Ill. Rev. Stat. 1979, ch. 30, par. 318.2.)

The statute specifically provides both parties to the agreement with the right of cancellation. We fail to see how this provision, under the circumstances, gives either side a preferred status over the other.

Turning to plaintiff's contention that section 18.2 is overbroad in that it strikes at all contracts, regardless of their reasonableness, requires an examination into the right of the State to regulate contract rights. The proposition is settled and beyond dispute that contract rights are subject to the reasonable and legitimate exercise of this State's police power. (*Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, 357-58, 288 N.E.2d 423.) The statute in question here was enacted in response to a perceived social evil inherent in the condominium setting. Residential condominium purchasers often face lengthy, expensive, and by their terms, usually noncancellable, contracts executed by the developer prior to the transfer of control of the condominium association to the unit owners. (See Krebs, *Legislative Response to "Sweetheart" Management Contracts: Protecting the Condominium Purchaser*, 55 Chi. Kent L. Rev. 319, 319-25 (1979).) In fact, one of the specific congressional findings in the Condominium and Cooperative Abuse Relief Act of 1980 provides as follows:

> "(3) certain long-term leasing arrangements for recreation and other condominium- or cooperative-related facilities which have been used in the formation of cooperative and condominium projects may be unconscionable; in certain situations State governments are unable to provide appropriate relief; as a result of these leases, economic and social hardships may have been imposed upon cooperative and condominium owners, which may threaten the continued use and acceptability of these forms of ownership and interfere with the interstate

sale of cooperatives and condominiums; appropriate relief from these abuses requires Federal action." (15 U.S.C. sec. 3601(a)(3) (1982).)

In the Historical and Practice Notes to section 18.2, it is stated as follows:

"Abuses brought about by extended developer control were considered by the Legislative Condominium Study Committee in 1975 to be one of the most serious problems facing condominium associations, and, therefore, this section was enacted." (Ill. Ann. Stat. ch. 30, par. 318.2, Historical and Practice Notes 1984 Supp.).)

Given the factual history and legal setting of condominiums, we cannot say that section 18.2 is an invalid exercise of the State's police power. The State obviously has a legitimate interest in protecting purchasers of condominiums from overreaching or abusive practices by a developer. Section 18.2 is a reasonable and rational method for achieving the State's goal of protecting condominium purchasers from abusive developer practices. Given the discretion we afford the legislature in regulating a statutorily created entity, the fact that section 18.2 strikes at all contracts is not unreasonable, nor does it render the statute overbroad, especially since the statute gives both parties the right of cancellation.

Plaintiff's argument that section 18.2 impermissibly impairs the obligation of contract is equally without merit. The statute in question was enacted and was effective prior to the execution of the lease. As stated by our supreme court: "The constitutional provision denying the power to pass any law impairing the obligation of a contract has reference only to a statute enacted after the making of a contract." *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 281, 201 N.E.2d 434.

In light of the manner in which we have resolved this case, we find no need to address defendant's contention that the trial court erroneously denied its post-trial motion.

For the above reasons, we reverse the decision of the trial court.

Reversed.

PERLIN and BILANDIC, JJ., concur.