Stephen F. **SELCKE, Director of Insurance of the State of Illinois, as Rehabilitator of Centaur Insurance Company, Plaintiff–Appellee,**

v.

**NEW ENGLAND INSURANCE COMPANY, formerly known as New England Reinsurance Corporation, Defendant–Appellant.**

No. 92–3768.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1993.

Decided June 3, 1993.

See also 1993 WL 327844.

David C. Roston, John W. Morrison (argued), William K. Myatt, Emily Solberg, Altheimer & Gray, Chicago, IL, for plaintiff-appellee.

James I. Rubin, Robert N. Hermes, Samuel W. Ach (argued), Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, IL, for defendant-appellant.

Before CUDAHY and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

The New England Reinsurance Company (NERCO) appeals under 9 U.S.C. § 16(a)(1)(A) from the denial of its motion to stay, pending arbitration, a diversity suit for breach of contract brought against it by the rehabilitator of an insolvent insurance company named Centaur. Centaur claims that NERCO owes it more than $4 million under four reinsurance contracts. NERCO admits owing most of this amount to Centaur but claims that Centaur owes it and its affiliates

more than $33 million under other reinsurance contracts and that NERCO is entitled to set off what it owes Centaur against what Centaur owes it. The $33 million claim is greatly exaggerated, because most of the money in question is owed to affiliates of NERCO that are not parties to this suit. However, the amount is not material to the appeal.

Each of the four contracts on which Centaur's suit is based contains an arbitration clause which provides (with immaterial variations in wording and punctuation) that "should an irreconcilable difference arise as to the interpretation of this Agreement, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration." The district judge refused to order arbitration, reasoning that NERCO's claimed right to setoff is statutory and that a dispute over that right is therefore not a dispute over the interpretation of the contract.

■ The law of Illinois, which the parties agree governs the substantive issues in this case, creates a right to set off mutual credits and debts between an insolvent insurance company and any other person. Ill. Rev.Stat. ch. 73, ¶ 818. It is on that law that NERCO bases its defense. But it is also the law of Illinois that "statutes in existence at the time a contract is executed" are deemed, in the absence of contractual language to the contrary, "part of the contract as though they were expressly incorporated therein." *McMahon v. Chicago Mercantile Exchange,* 221 Ill.App.3d 935, 164 Ill.Dec. 369, 375, 582 N.E.2d 1313, 1319 (1991). To same effect see *S & D Service, Inc. v. 915–925 W. Schubert Condominium Ass'n,* 132 Ill.App.3d 1019, 88 Ill.Dec. 163, 168, 478 N.E.2d 478, 483 (1985); *Merrill Tenant Council v. U.S. Department of Housing & Urban Development,* 638 F.2d 1086, 1089–90, 1092 (7th Cir. 1981). (*Washburn v. Societe Commerciale de Reassurance,* 831 F.2d 149, 152 (7th Cir. 1987), could be thought to look the other way, but the issue was not discussed.) In other words, statutes are a source of implied contractual terms, *McMahon v. Chicago Mercantile Exchange, supra,* 164 Ill.Dec. at 375, 582 N.E.2d at 1319—the Uniform Commercial Code being the most common such source—just like common law doctrines, *Nevin v. Pullman Palace Car Co.,* 106 Ill. 222, 233 (1883), such as the duty of good faith, which in Illinois is read into all contracts. *P.A. Bergner & Co. v. Lloyds Jewelers, Inc.,* 112 Ill.2d 196, 97 Ill.Dec. 415, 418, 492 N.E.2d 1288, 1291 (1986); *Scherer v. Rockwell Int'l Corp.,* 975 F.2d 356, 360 (7th Cir. 1992). Illinois statute law thus makes the right of setoff an implied term of any contract with an insolvent insurance company.

■ A suit to enforce an implied term is a suit that arises under the contract; and likewise a defense, based on an implied term, to a suit. The fact that the source of the implied term is a statute rather than an inference from what the parties said or from the circumstances of the contract makes no difference. All the statute at issue in this case does is create a right of setoff. The contours of that right as applied to specific reinsurance contracts alleged to create offsetting credits or debts depend on practical, contextual, fact-laden judgments that nestle as cozily within the competence of arbitrators experienced in the arcane practices and usages of the reinsurance industry as any other interpretive issue likely to arise in a reinsurance contract.

It is true that the arbitration clause in the contracts involved in this case is worded narrowly. It does not provide for arbitration of all disputes arising under the contract, just those that involve disagreements over interpretation. Most arbitration clauses are broader, often extending to all disputes growing out of the contract, as in *Local 703, International Brotherhood of Teamsters v. Kennicott Bros. Co.,* 725 F.2d 1088, 1089 (7th Cir.1984). Despite the favorable judicial attitude toward arbitration—a selfish attitude, in part, because the courts are heavily burdened these days and arbitration is an alternative to adjudication—it is for the parties to decide which if any of their disputes shall be subject to arbitration, and their decision should be honored. But we think a dispute over an implied term is within the class of interpretive disagreements, even if the source of the term is statutory. In fact the source is irrelevant. A contract is the sum of

its express and implied terms. It is not easy to see why contracting parties would want arbitration if the dispute was over an express term but adjudication if it was over an implied one—and what of the case where both sorts of term are in dispute? The clause in our case is worded quite similarly to other arbitration clauses that are common in the insurance and reinsurance industries, *Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 391 (7th Cir.1984); *Bennett v. Liberty National Fire Ins. Co.*, 968 F.2d 969, 971 (9th Cir. 1992); Robert F. Salm, "Reinsurance Contract Wording," in *Reinsurance* 79, 135 (Robert W. Strain ed. 1980), yet are interpreted broadly. *Id.* at 79. It is true that many of these arbitration clauses cover disputes over performance as well as over interpretation and that this clause does not, but we do not think that this should make a difference when the dispute is over interpretation. We can imagine a case in which both parties agree that for example some form of notice is a condition precedent to performance, and the only dispute is over whether the notice was given. That dispute would be arbitrable if the arbitration clause included performance disputes, not if it did not. Ours is not such a case.

■ Centaur argues that NERCO waived the argument that the setoff statute creates an implied contractual term by failing to make it to the district judge. NERCO had moved for arbitration on the ground that its dispute over setoff was a disagreement over the interpretation of the reinsurance contracts. Centaur replied that NERCO's right of setoff was statutory, not contractual. To this NERCO would no doubt have replied that there was no inconsistency, since, as it argues in this court, a statute can create an implied contractual term. But it is the district judge's policy not to accept reply briefs. NERCO cannot be faulted for failing to take heroic measures to get a reply before a district judge who does not want replies. The fault is the judge's policy on reply briefs.

Centaur derides the concept of statute-created implied terms as a legal fiction. Well, sometimes it is, as pointed out in *General Motors Corp. v. Romein*, —— U.S. ——, ———– ——, 112 S.Ct. 1105, 111–12, 117

L.Ed.2d 328 (1992), but not here. The law could require contracting parties to specify every right and duty that they wanted to make legally enforceable, but then contracts would be very long. An economizing measure is for the law to create, whether by statute or common law, standard, "off the rack" terms that parties can vary if they want but that govern otherwise, eliminating the need for parties to negotiate them expressly in every contract. It is the same economizing impulse to which we owe the standard-form contracts that businesses adopt for repetitive transactions. *Northwestern National Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir.1990).

A right of setoff is a sensible self-help remedy that reduces the cost of collecting a debt. *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1441 (7th Cir.1993). It is particularly useful when a debtor against whom a creditor is seeking to set off a debt that he owes the debtor may be insolvent, hence difficult to collect money from in a suit. In such a case the right of setoff not only saves the setoff creditor the costs of bringing a separate lawsuit, but also gives him security for the debt owed him. It is therefore a natural term to include in a contract with an insurance company that may become insolvent (although the contract might have to be recorded in order to be effective against other creditors), and the Illinois statute saves the parties to such a contract the bother of negotiating the term expressly. Because insurance companies frequently have multiple contracts with each other, the probability of claiming setoff is higher than in other businesses and this is an additional reason for having a standard term.

But as our reference to recordation and secured credit acknowledges, the statutory setoff right affects not only the contracting parties but also third parties, namely other creditors. In fact the statute is part of Illinois' comprehensive insolvency regime for insurance companies, Ill.Rev.Stat. ch. 73, ¶¶ 799 *et seq.*, which are exempt from federal bankruptcy law. 11 U.S.C. § 109(b)(2). Setoff in insolvency or bankruptcy (compare Ill. Rev.Stat. ch. 73, ¶ 818, with 11 U.S.C. § 553), by allowing otherwise unsecured creditors to

offset what they owe the debtor against what the debtor owes them, gives them priority over other unsecured creditors. Suppose an insolvent insurance company (I) has $200 in assets, of which $100 is a receivable from creditor S, and $400 in debts, of which $100 is owed to S. If S is allowed to offset what it owes I against what I owes it, its claim of $100 will in effect have been paid in full, while I's other creditors, holding a total of $300 in claims against the remaining $100 in assets, will each receive only 33 cents on the dollar. If setoff is not permitted, every creditor will receive 50 cents on the dollar.

So although a setoff provision could in principle be merely a standard term that Illinois law inserts in every contract with an insurance company to save the parties the trouble of doing so, it appears to be more. It appears to be part of the regulatory regime that the state has imposed on insurance company insolvencies in order to adjust rights among creditors and not just between the parties to the contract claimed to authorize setoff. Even broadly worded arbitration clauses are assumed not to extend to claims that arise out of the provisions of bankruptcy law itself, *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir.1989), and the Illinois insolvent insurance company setoff statute could easily be viewed in that light.

We do not think it either possible or necessary to decide which is the better characterization of the statute. On the one hand it adjusts the rights of the parties to the insurance contract *inter se*, and on the other hand it also adjusts the rights of the parties with respect to others. In the former capacity it is realistically viewed as an implied contractual term and hence within the scope of the arbitration clause, but in the latter capacity characterization as an implied term becomes strained. On the other hand the terms that Article 9 of the Uniform Commercial Code implies in contracts affect third parties because Article 9 is about secured lending, yet no one doubts that such terms are genuine implied contractual terms. Moreover, although the outcome of the arbitration in this case (if it is allowed to take place) may affect other creditors of Centaur, no one suggests that a judicial determination of NERCO's setoff rights would produce a result somehow fairer to the other creditors or more consistent with the objectives of Illinois' law on insurance company insolvency; realistically, the other creditors' interests are not affected by the choice of the method of dispute resolution, and none of them has complained about submitting Centaur's claims against NERCO to arbitration. The issues in the setoff proceeding will be no different from what they would be if the right of setoff were conferred by an express contractual term, rather than a statutorily implied one, and in the former case NERCO's right to arbitration would be indisputable. All things considered, we think the dispute over setoff is within the scope of the arbitration clause, though just barely.

The order denying the stay pending arbitration is reversed, with instructions to grant it.